UNITED STATES of America,
Plaintiff–Appellee,

v.

Frank STALLINGS, Jr., Defendant–
Appellant.

No. 93–3354.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1994.

Decided June 24, 1994.

Cathleen V. Compton, El Dorado, AR, argued, for appellant.

Larry R. McCord, Fort Smith, AR, argued (Steven N. Snyder, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Frank Stallings, Jr., entered a conditional plea of guilty to federal drug charges, reserving the right to appeal the district court's[1] order denying his motion to suppress evidence that he asserts the government obtained in an illegal search. The district court adopted the report and recommendation of the magistrate judge,[2] finding that Stallings had no standing to assert a Fourth Amendment claim because he had no reasonable expectation of privacy in the tote bag the government searched. Stallings asserts that the district court erred in finding he had no standing. We affirm.

## I.

The relevant facts are not disputed. In July 1992, the Warren, Arkansas, Police Department began surveillance of Stallings after receiving information from a confidential informant that Stallings was storing illegal narcotics in a field adjacent to his house and yard. The police set up the surveillance approximately 50 yards behind Stallings' house in the open field where he allegedly was storing the narcotics, a field he neither owned nor leased.

On July 30, 1992, at approximately 7:00 a.m., Officers Lane Smith and John Wisener observed Stallings entering the field on the path behind his house. The officers lost sight of him for approximately 15 seconds as he disappeared into the underbrush. Stallings re-emerged and returned by the path to his house.

Surveillance was suspended for a short period of time due to weather conditions. On August 3, 1992, at approximately 5:15 a.m., Officers Smith and Wisener resumed their positions in the field behind Stallings' house. At 6:30 a.m., Officer Smith, in camouflage clothing and face paint, moved approximately 10 feet further away from the house as the daylight began to emerge. As he moved, he noticed an object with white lettering in the thick underbrush. Officer Smith moved to view the object and determined that it was a green tote with "Salem" written in large white lettering. The bag was zipped shut. He found nothing about the tote bag at that time that led him to believe there was anything illegal about it. Officer Smith noted that the bag was in good shape but that it seemed to be out of place. He decided to look inside. He left the bag in the original position and unzipped it. He found a small set of scales, a plastic tray, and a plastic bag with two rocks of crack cocaine. He closed the bag, leaving it in its original position and concealed himself in the thick growth about an arm's length from the tote bag. About an hour later, Stallings entered the field and was arrested by the officers as he approached the tote bag. The officers performed a pat down search and found Stallings in possession of additional illegal substances. Stallings subsequently gave incriminating statements to the authorities.

1. The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

2. The Honorable Beverly R. Stites, United States Magistrate Judge for the Western District of Arkansas.

Stallings moved to suppress the evidence that the officers obtained from the search of the tote bag and pat-down search and the incriminating statements that he made. Stallings contended that the search violated his Fourth Amendment rights and that all the evidence against him should be excluded as "fruit of the poisonous tree." On May 18, 1993, the magistrate judge held an evidentiary hearing on the motion to suppress. Officer Smith was the only witness called. On May 19, 1993, the magistrate judge entered a report and recommendation, finding that Stallings had no standing to contest the search as he had no reasonable expectation of privacy in the tote bag left in an open field and that nonetheless, the search was allowable under the "plain view" doctrine. On May 25, 1993, the district court adopted the report and recommendation over Stallings' objection. At about this time, Stallings entered a plea of guilty to the charges conditioned on his right to appeal the denial of the motion to suppress the evidence against him.

On August 23, 1993, on Stallings' request, the magistrate judge held a supplemental hearing on the motion to suppress and allowed Stallings to put on evidence to impeach some points of Officer Smith's testimony. On August 25, 1993, the magistrate judge issued a supplemental report and recommendation and found that the additional evidence did not change any of her findings or her recommendation that Stallings did not have standing to contest the search of the tote bag because he had no expectation of privacy. The district court subsequently sentenced Stallings to 240 months in prison. He appeals only the ruling on the motion to suppress.

## II.

■ The threshold issue in this case is whether Stallings has standing to challenge the search of the tote bag. In order to have standing to challenge a search or seizure under the Fourth Amendment, the defendant must have a legitimate expectation of privacy in the places or objects searched. *United States v. Gomez,* 16 F.3d 254, 256 (8th Cir. 1994) (citing *Rakas v. Illinois,* 439 U.S. 128, 138–44, 99 S.Ct. 421, 427–31, 58 L.Ed.2d 387 (1978)). "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally." *Id.* "The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area [or item] searched." *Id.* We have previously noted:

> The Supreme Court has enunciated a two part test to determine whether a person has a legitimate expectation of privacy in the place searched or the object seized. A court must determine: (1) whether the petitioner has asserted a subjective expectation of privacy, and (2) whether the petitioner's subjective expectation is objectively reasonable.

*United States v. Kiser,* 948 F.2d 418, 423 (8th Cir.1991) (citing *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979), and *California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 1812, 90 L.Ed.2d 210 (1986)), *cert. denied,* —— U.S. ——, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992). "The first part of the test is a question of fact that we review under a clearly erroneous standard, while the second part is a question of law, dictating de novo review." *Id.*

■ To meet the first part of the test, Stallings must demonstrate that by his conduct, he sought to preserve the tote bag as private. *See, e.g., United States v. Welliver,* 976 F.2d 1148, 1151 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1643, 123 L.Ed.2d 265 (1993); *Kiser,* 948 F.2d at 424; *United States v. Monie,* 907 F.2d 793, 794 (8th Cir.1990). We conclude that Stallings has failed to make such a factual demonstration. As the district court found, he left the tote bag in an open field [3] and without any indicia of his ownership. Stallings put on no evidence of his possession or control of the

---

**3.** We agree with Stallings that the "open field doctrine" is not completely dispositive in this case because the real question is not the officers' authority to be upon and search the field but instead their authority to search the zipped tote bag. However, the fact that the bag was left in an open field owned by another is highly relevant, as a factual matter, in demonstrating the reasonableness of his expectation of privacy.

bag, his historical use of the tote bag, or his ability or attempts to regulate access to it. *See Gomez*, 16 F.3d at 256 (noting that "[f]actors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; [and] ability to regulate access").[4] As a matter of fact, Stallings put on no evidence whatsoever that he sought to preserve the tote bag and its contents as private or even believed that they would be private. Accordingly, we conclude that Stallings failed to establish a subjective expectation of privacy.

 "Because we dispose of this case on the first level of inquiry, we need not reach the second." *Monie*, 907 F.2d at 794. However, even if we were to assume that Stallings had a subjective expectation of privacy, we would decline to hold that it was objectively reasonable. Society would not be "prepared to accept that expectation as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 40, 108 S.Ct. 1625, 1628, 100 L.Ed.2d 30 (1988). Stallings left the bag unattended in an open field in which he had no possessory interest with no apparent means of restricting access to it. "What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). As in *Greenwood*, where the Supreme Court found that the defendants did not have an objectively reasonable expectation of privacy in their trash, any expectation of privacy

Stallings had is not objectively reasonable in this case because "animals, children, scavengers, snoops, and other members of the public" had access to the tote bag. 486 U.S. at 40, 108 S.Ct. at 1628–29. We have held that even the "theoretical possibility" that "animals, children, scavengers, snoops, and other members of the public" would happen onto an item was sufficient to make a defendant's expectation of privacy unreasonable. *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1242 (8th Cir.1990). That theoretical possibility certainly exists here.[5]

 We acknowledge that "what [a defendant] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz*, 389 U.S. at 351–52, 88 S.Ct. at 511. Here, however, Stallings has failed to show how he sought to preserve the tote bag as private. On the record presented, we must conclude that Stallings did not have an objectively reasonable expectation of privacy in the tote bag he left in the field.[6]

### III.

Given our conclusion that Stallings failed to demonstrate a legitimate expectation of privacy in this case, we agree with the district court that he had no standing to challenge the search. Accordingly, we affirm the judgment of the district court.

---

4. We also noted in *Gomez* that the another factor to consider is the totality of the circumstances surrounding the search. Here, the totality of the circumstances surrounding the search likewise fails to support Stallings' expectation of privacy. There is no dispute that Officer Smith fortuitously stumbled upon the bag and searched it only because he thought it was out of place. As noted, the magistrate judge specifically found that the bag bore no indicia of ownership indicating it belonged to Stallings.

5. Moreover, as counsel admitted during argument in this case, anyone else who happened to stumble onto the bag would have thought it was reasonable to look inside. Hence, we find that an officer who stumbled upon the bag that looked out of place would not be expected to leave it undisturbed if for no other reason than to attempt to return it to its owner.

6. Stallings asserts that this case is very similar to *United States v. Sylvester*, 848 F.2d 520 (5th Cir. 1988), where the court held that a hunter maintained a reasonable expectation of privacy in a hunting box left unattended at one place while he was hunting in another part of the field. First, we are not persuaded by the reasoning of *Sylvester*. Moreover, unlike this case, the agents in *Sylvester* knew that what they had come upon was the hunter's box. They were in the field to apprehend hunters utilizing illegal hunting practices and searched the box as part of the investigation. Here, the undisputed testimony is that Officer Smith stumbled upon the tote bag which looked out of place and bore no indication that it was evidence for which he was looking.