Jerry RAINEY and James Harton *v.* James HARTNESS,
In His Individual Capacity as Wildlife Officer for Grant County

99-529                                    5 S.W.3d 410

Supreme Court of Arkansas
Opinion delivered December 2, 1999

*Bowden Law Firm*, by: *David O. Bowden*, for appellants.

*Mark Pryor*, Att'y Gen., by: *Patricia Van Ausdall Bell*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellants Jerry Rainey and James Harton filed a civil-rights suit in the Grant County Circuit Court against Appellee James Hartness, a wildlife enforcement officer with the Arkansas Game and Fish Commission. The suit alleged that Hartness (1) entered their property without authority; (2) seized Harton's rifle through an illegal search and converted it without due process of law and just compensation; and (3) damaged their crops by driving over them on a four-wheel, all-terrain vehicle. The trial court granted summary judgment to Hartness, and Appellants appealed. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(1) & (b)(3), as it presents issues of construction of both the United States and Arkansas Constitutions. We find no error and affirm.

Appellants' claims involve actions that occurred on the morning of October 21, 1995, during muzzleloading deer season. The record reflects that Appellants were engaged in hunting on wooded land owned by Rainey and leased by Harton. Appellants were situated at deer stands in different areas of the land. Hartness was patrolling the area that morning, when he noticed unattended vehicles on Rainey's property, leading him to believe that people were hunting there. Hartness rode his four-wheel vehicle onto the property, where he first encountered Rainey at his deer stand. When Hartness asked to see Rainey's hunting license, Rainey initially produced the license of someone else. Hartness issued Rainey a citation, pursuant to Regulation 03.06 of the Arkansas Game and Fish Commission Regulations (the Regulations), for being in possession of the hunting license of another person.

Hartness then followed the path to another deer stand, where he encountered Harton. According to Hartness, Harton came down from his deer stand without being asked to do so. Hartness considered this strange because it was a cold morning and because hunters normally wait for him to come up to them. Harton stated that he was muzzleload hunting, and he produced a license to do so. After viewing the license, Hartness climbed up the ladder and looked through the opening in the deer stand. There, he saw a Marlin Lever Action .22 caliber rifle with a scope. Hartness took possession of the rifle and issued Harton a citation for violating Regulation 07.03, which provides that it is "unlawful to have in immediate possession a centerfire or rimfire weapon while participating in muzzleloading deer seasons."

Appellants were found guilty of the violations in municipal court. Harton, however, appealed his conviction to circuit court. There, Harton argued that at the time Hartness issued the citation, he had not been elected by the Commission, pursuant to Amendment 35 of the Arkansas Constitution. Thus, he argued that the citation was invalid. The circuit judge agreed with Harton's argument and granted the State's motion for nolle prosequi. Hartness retained possession of Harton's gun, pursuant to the deputy prosecutor's instructions, in the event the charges were refiled. The gun was returned to Harton some time after the instant suit was filed; Harton signed a receipt, indicating that the gun was returned in good condition.

Appellants brought their suit pursuant to the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101 to -108 (Supp. 1999), and 42 U.S.C. §§ 1983 and 1988. Appellants alleged that Hartness's actions on October 21, 1995, violated their constitutional right to be free from unreasonable searches and seizures. They alleged further that the seizure of Harton's rifle violated his right to bear arms and was a taking without due process and just compensation. Lastly, they alleged that Hartness damaged their crops by driving over them on his four-wheel vehicle. They also sought declaratory judgments from the trial court that (1) Hartness was not an elected wildlife enforcement officer, and (2) Regulation 07.03 is unconstitutional under Article 2, § 5, of the Arkansas Constitution and the Second Amendment to the United States Constitution. The trial court granted Hartness's motion for summary judgment on all claims and denied the requested declaratory judgments. We

first address Appellants' argument pertaining to Hartness's status as a wildlife enforcement officer, as that issue will have considerable bearing on the remaining points.

*Election under Amendment 35*

Appellants argue that the trial court erred in finding that Hartness had been elected by the Commission as a wildlife enforcement officer on October 21, 1995. They argue that, at a minimum, summary judgment was not appropriate because there were issues of fact yet to be determined. They contend further that the January 12, 1995 election is invalid because the Commission failed to publish the election results (*i.e.*, in the Commission's minutes) in violation of the Arkansas Administrative Procedures Act (APA). We disagree.

Appellants' argument stems from a 1994 holding by the Grant County Circuit Court, The Honorable John Cole, that Amendment 35 requires the Commission to elect wildlife officers such as Hartness. Judge Cole specifically found that Hartness had not been elected and that, accordingly, he was not authorized to issue citations for Game and Fish violations.[1] According to his affidavit in the instant case, Hartness brought Judge Cole's ruling to the attention of his supervisors. In January 1995, Hartness was informed by his supervisors that an election had been held and that the Commission had elected him to the position of wildlife enforcement officer. At some point in September 1996, however, it was discovered that the minutes for the January 1995 meeting did not reflect his election. As a result, the Commission reelected Hartness as a wildlife enforcement officer.

We note at the outset that the parties did not argue the merits of Judge Cole's ruling to the trial court. Thus, for purposes of this appeal, we assume, without deciding, that Amendment 35 requires the Commission to elect wildlife officers. Given that assumption, we agree with the trial court that the proof submitted by Hartness, which consisted largely of affidavits from the individual Commissioners and other staff members, conclusively showed that

[1] The State appealed Judge Cole's ruling to this court, but the appeal was dismissed for lack of subject-matter jurisdiction. *See State v. Bickerstaff*, 320 Ark. 641, 899 S.W.2d 68 (1995).

Hartness was elected to his post on January 12, 1995, approximately ten months prior to the incident in question. The law is well settled that summary judgment may be granted when it is clear that there are no genuine issues of material fact to be litigated and the party is entitled to judgment as a matter of law. *Raynor v. Kyser*, 338 Ark. 366, 993 S.W.2d 913 (1999). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party "must discard the cloak of formal allegations and meet proof with proof by showing that an issue of fact exists." *Hodges v. Huckabee*, 338 Ark. 454, 464, 995 S.W.2d 341, 348 (1999). Appellants failed to meet proof with proof on this issue. We thus affirm the grant of summary judgment.

We do not address the argument pertaining to the applicability of the APA, as it is not apparent from Appellants' abstract that this issue was ever raised or ruled upon below. Where the abstract does not reflect that the argument was made in the trial court, we will not reach the merits of the argument on appeal. *K.M. v. State*, 335 Ark. 85, 983 S.W.2d 93 (1998); *Barber v. Watson*, 330 Ark. 250, 953 S.W.2d 579 (1997). Having thus affirmed the trial court's finding that Hartness was a wildlife enforcement officer during the time in question, we consider the constitutional claims. Before we reach the substance of those claims, however, we must first determine whether Hartness is entitled to qualified immunity.

*Qualified Immunity — Federal Law*

Generally, government officials performing discretionary functions are granted a qualified immunity from suit under section 1983 and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts evaluating a claim of immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and, if so, whether that right was clearly established at the time of the alleged violation. *Id.* This court adopted the Supreme Court's test for qualified immunity in section 1983 cases in *Robinson v. Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (1987). The issue of whether the official's conduct violated clearly established constitutional rights is a question of law

that may be resolved by summary judgment. *Id.* With this test in mind, we turn to the Fourth Amendment issue.

■ The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article 2, § 15, of the Arkansas Constitution is virtually identical to the Fourth Amendment, and we interpret it in the same manner as the United States Supreme Court interprets the Fourth Amendment. *See Mullinax v. State,* 327 Ark. 41, 938 S.W.2d 801, *cert. denied,* 117 S. Ct. 2411 (1997); *Stout v. State,* 320 Ark. 552, 898 S.W.2d 457 (1995).

■ The Supreme Court has recognized that the protection afforded by the Fourth Amendment does not extend to open fields or lands. *United States v. Dunn,* 480 U.S. 294 (1987) (citing *Hester v. United States,* 265 U.S. 57 (1924)). This court has also recognized the "open fields" doctrine. *See, e.g., Sanders v. State,* 264 Ark. 433, 572 S.W.2d 397 (1978); *Wyss v. State,* 262 Ark. 502, 558 S.W.2d 141 (1977); *Bedell v. State,* 257 Ark. 895, 521 S.W.2d 200 (1975), *cert. denied,* 430 U.S. 931 (1977). Additionally, Rule 14.2 of the Arkansas Rules of Criminal Procedure provides: "An officer may, without a search warrant, search open lands and seize things which he reasonably believes subject to seizure."

Here, the evidence showed that Rainey's property was open, wooded land. Appellants admit in their complaint that the land was used for the recreational purpose of hunting deer and other game. Regulation 01.00-B provides in pertinent part that wildlife officers have authority to "go upon any property outside of private dwellings, posted or otherwise, in the performance of their duties," and that they "may with or without a warrant according to law, conduct searches." In their memorandum below, Appellants essentially concede that if Hartness was a properly elected wildlife officer, he had authority to come onto Rainey's land. Thus, Hartness's entry onto the property on his four-wheel vehicle did not violate the Fourth Amendment or Article 2, § 15. The question then is

whether Hartness's actions in climbing up the ladder to look into Harton's deer stand violated those constitutional provisions. Appellants urge that Harton enjoyed a legitimate expectation of privacy in his deer stand, and that, therefore, the warrantless search of the stand's interior violated the Fourth Amendment. We disagree.

Within the meaning of the Fourth Amendment, a search "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Roby*, 122 F.3d 1120, 1123 (8th Cir. 1997) (quoting *United States v. Jacobson*, 466 U.S. 109, 113 (1984) (footnote omitted)). A person who knowingly exposes an object to the public cannot expect the protection from unreasonable search and seizure provided by the Fourth Amendment. *Webster v. State*, 300 Ark. 169, 777 S.W.2d 849 (1989) (citing *Katz v. United States*, 389 U.S. 347 (1967)). "[E]ven a property interest in premises may not be sufficient to establish a legitimate expectation of privacy with respect to particular items located on the premises or activity conducted thereon." *State v. Hamzy*, 288 Ark. 561, 565, 709 S.W.2d 397, 399 (1986) (quoting *Rakas v. Illinois*, 439 U.S. 128, 144 n.12 (1978) (citing *Katz*, 389 U.S. 347; *Lewis v. United States*, 385 U.S. 206 (1966); *United States v. Lee*, 274 U.S. 559 (1927); *Hester*, 265 U.S. 57)). When an expectation of privacy is claimed, the trial court must determine: (1) Whether the defendant has asserted or manifested a subjective expectation of privacy, and (2) whether that expectation is objectively reasonable. *United States v. Stallings*, 28 F.3d 58 (8th Cir. 1994). Although the first prong is a question of fact, the second is one of law. *Id*. Thus, even assuming that the defendant has proven a *subjective* expectation of privacy, in the final analysis, that expectation must be objectively reasonable. *Id*. After reviewing the evidence in this case, we conclude that the trial court did not err in finding that, as a matter of law, Harton enjoyed no legitimate expectation of privacy in the deer stand.

The evidence presented below demonstrates that the stand was little more than a metal box, with sides three to four feet high and a roof elevated on poles at each corner of the box. Persons standing inside the box were exposed to the public's view, as Hartness testified that he observed Harton on the stand as he approached the area. There was no evidence that Harton used the stand to engage in private activity, other than eating meals, or that he attempted to shield his activities from the public. Moreover, Harton employed no

apparent means of restricting access to the stand. *Stallings*, 28 F.3d 58. There was no evidence that the structure was inaccessible to other persons (*i.e.*, that the hatch door was locked or that the ladder was removed whenever he was not using the stand), only Harton's claim that it was not open to use by other persons unless he invited them. Accordingly, there was a "theoretical possibility" that "animals, children, scavengers, snoops, and other members of the public" would happen onto the stand, thus rendering any claimed expectation of privacy objectively unreasonable. *Id.* at 61 (quoting *Wabun-Inini v. Sessions*, 900 F.2d 1234, 1242 (8th Cir. 1990)).

Furthermore, contrary to Appellants' assertion, there is no evidence that the deer stand was within the curtilage of the temporary residences (*i.e.*, campers on blocks) located on the property. Assuming, *arguendo*, that the campers qualify as "houses" under the Fourth Amendment, we nonetheless conclude that the stand was not within the curtilage. The Supreme Court has held that curtilage questions should be resolved with reference to four factors: (1) the proximity of the area to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken to protect the area from observation by people passing by. *Dunn*, 480 U.S. 294. Here, the evidence showed that Rainey's stand was approximately one-quarter mile away from the campers, and that Harton's stand was approximately one-quarter mile from Rainey's stand. Thus, the area sought to be protected (the deer stand) was approximately one-half mile away from the campers. There was no evidence of a fence or other enclosure surrounding the campers and the stand. Nor was there any evidence that the stand was used for the "intimate activities of the home." *Id.* at 302. Finally, as explained above, Harton did little, if anything, to restrict access to the stand by other persons. Accordingly, the stand was not a part of the curtilage.

Based on the foregoing, we conclude that Hartness was entitled to qualified immunity from Appellants' federal civil-rights claims. Hartness's conduct on October 21, 1995, did not violate any clearly established constitutional rights possessed by Appellants. Appellants enjoyed no rights under the Fourth Amendment that would protect them from (1) Hartness's entry onto their property and (2) Hartness's search of Harton's deer stand. Because Hartness's search of the stand was legal under the Fourth Amendment, his

seizure of the rifle as evidence was valid. Rule 10.2 of the Arkansas Rules of Criminal Procedure provides that a permissible object of seizure includes evidence of a criminal offense or other violation of the law. Accordingly, seizure of the gun was not a "taking" proscribed by Article 2, §§ 21 and 22, of the Arkansas Constitution.

### Qualified Immunity — State Law

Arkansas Code Annotated § 19-10-305 (Supp. 1999) provides in pertinent part: "Officers and employees of the State of Arkansas are immune from liability from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment." This court has interpreted that section to mean that state officers and employees acting without malice and within the course and scope of their employment are immune from an award of damages in litigation. *See Newton v. Etoch*, 332 Ark. 325, 965 S.W.2d 96 (1998); *Cross v. Arkansas Livestock & Poultry Comm'n*, 328 Ark. 255, 943 S.W.2d 230 (1997). This court has recognized that the immunity provided by section 19-10-305 is similar to that provided by the Supreme Court for federal civil-rights claims. *See Robinson v. Langdon*, 333 Ark. 662, 970 S.W.2d 292 (1998). The facts in the instant case clearly demonstrate that Hartness was acting in the scope of his employment with the Commission at the time that he entered onto Rainey's land. Appellants do not allege that Hartness was covered by liability insurance or that he acted maliciously. Accordingly, he is immune from damages for the state-law civil-rights claims. Hartness is also immune from the tort claim of damage to Appellants' crops allegedly caused by his driving over them on his four-wheel vehicle.

### Constitutionality of Regulation 07.03

Finally, we affirm the trial court's refusal to declare unconstitutional Regulation 07.03, which prohibits a hunter from having in his immediate possession a centerfire or rimfire weapon while participating in muzzleloading deer seasons. Appellants had argued that the regulation infringes upon the right to bear arms guaranteed by the Second Amendment to the United States Constitution and Article 2, § 5, of the Arkansas Constitution. That argu-

ment was not, however, developed beyond that bare allegation. Furthermore, Appellants have failed to make any convincing argument or cite to any convincing authority in support of their claim. This court has stated on numerous occasions that we do not consider assertions of error that are unsupported by convincing legal authority or argument, unless it is apparent without further research that the argument is well taken. *See, e.g., National Bank of Commerce v. Dow Chem. Co.*, 338 Ark. 752, 1 S.W.3d 443 (1999); *Ellis v. Price*, 337 Ark. 542, 990 S.W.2d 543 (1999); *Hodges v. Lamora*, 337 Ark. 470, 989 S.W.2d 530 (1999). Accordingly, we summarily affirm on this issue.

THORNTON, J., not participating.