FAMILY DOLLAR STORES, INC. &
St. Paul Travelers Insurance  *v.*  Barbara S. EDWARDS

CA 06-583                                          245 S.W.3d 181

Court of Appeals of Arkansas
Opinion delivered December 13, 2006

*Mark Alan Peoples, PLC*, for appellants.

*John Barttelt*, for appellee.

SAM BIRD, Judge. Appellants Family Dollar Stores, Inc., and St. Paul Travelers Insurance appeal from a decision of the Workers' Compensation Commission awarding benefits to appellee Barbara S. Edwards, who suffered a heart attack one day after she was robbed at gunpoint while working as a cashier at a Family Dollar Store. We affirm.

At a hearing before the administrative law judge, Edwards testified that she and Tara Hall were closing the Family Dollar Store in Wynne on March 26, 2004, when a man "came out from behind some clothes," put a gun to her head, demanded money, and ordered her and Hall to "get on the floor." Edwards said that the man, who was dressed in a ski mask, gloves, and a coat, crossed her arms and legs behind her and handcuffed them. He then took Edwards's car keys and belongings from her purse and left the store.

Edwards said that she and Hall "laid there for a little while" until Hall's grandmother began "banging" on the door, at which point Edwards and Hall "wiggled around and around" until they could get to the door. When they got there, they kicked the door open, and Hall's grandmother helped Edwards and Hall to their feet. Edwards said that she was "exhausted" and "out of breath" by the time she got to the door, and she had to stand with her feet crossed for ten minutes while waiting for police to arrive. She explained that she had been "pulling and yanking . . . trying to get loose," and that she "was hurting." Police removed Edwards's handcuffs when they arrived.

Edwards explained that she experienced discomfort or pain in her chest "right away" when the gun was pointed at her face. She also stated:

> I was so frightened till it was just like (gasping), it scared me so bad. I mean, it . . . just . . . happened so sudden[ly]. When did I first

begin worrying about I thought [sic] I might have something wrong with my heart? After I got out of the handcuffs and we were standing out on the front of the store. And I felt it, and I got real sick to my stomach. And . . . [it was] just like I was going to throw up, and just — it was just real sickening.

Edwards said that she went home around 11:00 p.m. on the night of the robbery, and she reported to the hospital around 12:00 noon the next day when her symptoms "didn't go away." She was diagnosed as having had a heart attack, was transported to Jonesboro by ambulance, and subsequently underwent surgery as the result of the heart attack.

Edwards's primary care physician, Dr. Julie Dow, opined in a letter dated June 24, 2004, that Edwards's "acute myocardial infarction was triggered by and largely due to the stress immediately [preceding the] armed [robbery] she witnessed." In a letter dated September 28, 2004, Edwards's cardiologist, Dr. Michael Isaacson, opined that the stress from a recent armed robbery "contributed to her myocardial infarction and hospitalization." On June 15, 2005, Dr. Isaacson opined that the robbery "was indeed the major cause of her . . . myocardial infarction occurring the following day." He explained in the letter that "[i]t has been demonstrated numerous times that an extreme emotional, and in this case even physical event, can precipitate a sudden myocardial infarction" and, in his opinion, "that is exactly what did occur." During a subsequent deposition, Dr. Isaacson stated:

Basically, particularly in Ms. Edwards' situation where somebody pointed a gun at her, you turn on the nervous system and basically scares the hell out of you. And that really does send a surge from the sympathetic nervous system, adrenaline, epinephrine, norepinephrine, and all of those things that scare and fright type phenomenon, can cause a plaque that heretofore had been a stable plaque to rupture. And that's how a lot of heart attacks occur. In fact, we think 70 percent of heart attacks occur on blockages under 50 percent. And there's a trigger, such as a gun pointed at you that can trigger these things to rupture at a weakened site of the plaque and then clot forms just like putting a gun or a shotgun barrel in the mud and plugging it.

. . . .

The emotional trauma that she was undergoing in the interim between . . . having had the gun pointed at her head, understandably

would cause a person emotional trauma, that built up over that period of time of 12 to 18 hours, that would lead someone to have a heart attack. I mean ... you know, obviously it would be easier say if it happened right when she had the — but it does, I mean, you've got the fright and the stress and the come down, as you might say. After having the gun pointed at her head, she's probably on quite an epinephrine high for, you know, I would say 24 hours after that phase.

During further questioning, Dr. Issacson stated:

As to whether it was more the emotional than the physical, I state probably more of the emotional than physical. I mean, I wasn't there so I don't know the extremes of the physical aspect. I know the emotional aspect was high from that.

As to whether the physical factors also contributed to her heart attack, I think those two go hand in hand. The physical aspect with the way things went down obviously enhanced the emotional aspect as well. So I don't — they're intertwined, I don't know that I can tease those two apart.

Dr. Isaacson also reiterated his opinion that the physical and emotional aspects of the robbery were the "major precipitating cause" of the heart attack.

The law judge found that Edwards had sustained a compensable heart attack, the Commission affirmed and adopted the law judge's opinion, and this appeal followed. When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001). Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Id.* The Commission's decision should not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Id.*

Arkansas Code Annotated section 11-9-114 (Repl. 2002) states as follows:

(a) A cardiovascular, coronary, pulmonary, respiratory, or cerebrovascular accident or myocardial infarction causing injury, illness,

or death is a compensable injury only if, in relation to other factors contributing to the physical harm, an accident is the major cause of the physical harm.

(b)(1) An injury or disease included in subsection (a) of this section shall not be deemed to be a compensable injury unless it is shown that the exertion of the work necessary to precipitate the disability or death was extraordinary and unusual in comparison to the employee's usual work in the course of the employee's regular employment, or, alternately, that some unusual and unpredicted incident occurred which is found to have been the major cause of the physical harm.

(2) Stress, physical or mental, shall not be considered in determining whether the employee or claimant has met his or her burden of proof.

In his findings, the law judge stated:

The provisions of the Workers' Compensation Act are to be strictly construed. Apparently, based upon the foregoing, [appellants] appear to be arguing that stress cannot be considered in determining whether a claimant has met her burden of proof. However, when A.C.A. § 11-9-114 is read in its entirety, it is apparent that day-to-day job stress, both physical and mental, cannot be considered and that only extraordinary and unusual, physical or mental stress must be found when compared to the employee's usual work in order to find a heart attack compensable. Clearly, in the instant case, the job stress both physically and mentally, was extraordinary and unusual. Accordingly, I find that the claimant has proven, by a preponderance of the credible evidence, that she sustained a compensable heart attack within the meaning of our workers' compensation laws.

Appellants contend that the Commission erred in concluding that Edwards sustained a compensable heart attack in this case because she failed to satisfy her burden of proof. Specifically, they argue that, under Ark. Code Ann. § 11-9-114, emotional stress is not to be considered in determining compensability of a heart attack. They assert that, based on testimony that Edwards developed chest pain prior to expending any physical effort in this case, it was "emotional" stress that triggered her heart attack. Appellants claim that the Commission has "liberalized and broadened" Ark. Code Ann. § 11-9-114 to find that "so long as the stress was extraordinary or unusual, then a heart attack caused by stress is compensable."

We find no error on the part of the Commission in this case. Dr. Isaacson opined that the physical and emotional aspects of the robbery were the "major precipitating cause" of Edwards's heart attack. Subsection (b)(1) of the statute clearly provides that certain on-the-job heart attacks may be compensable when it is shown that the exertion of the work necessary to precipitate the attack was "extraordinary and unusual in comparison to the employee's usual work in the course of the employee's regular employment." No serious argument can be made that the combined physical exertion and emotional distress that Edwards experienced while being robbed at gunpoint during the course of her employment were not "extraordinary and unusual" in comparison to her usual work as a cashier for Family Dollar Stores.

We recognize that subsection (b)(2) of the statute excludes physical and mental stress from consideration in determining compensability of a heart attack. However, it would be an unreasonable interpretation of the statute to hold that the combined effect of subsections (b)(1) and (b)(2) is to allow for the compensability of an on-the-job heart attack arising from the performance of work that is extraordinary or unusual in comparison to the employee's usual work, but to limit that compensability only to those rare employees who are able to perform such extraordinary or unusual work without experiencing any physical or mental stress. To the contrary, we believe that the more logical interpretation of subsections (b)(1) and (b)(2) is that if a heart attack is proved to have been caused by the physical or mental stress arising out of the performance of work that is extraordinary and unusual in comparison to the employee's usual work, the heart attack is compensable; but where an employee suffers an on-the-job heart attack in the absence of work that is unusual and extraordinary, or in the absence of the occurrence of some unusual or unpredicted incident, it is not compensable, regardless of the level of physical or mental distress the employee experiences.

Here, Edwards produced medical testimony that her heart attack was the result of "extraordinary and unusual" work in comparison to her usual work. We therefore hold that the Commission's opinion was supported by substantial evidence.

Appellants further argue that Edwards had pre-existing artery disease and cite the Commission's opinion of *Couch v. Ark. State Police*, WCC E500890 (1998), asserting that the two cases are similar. In *Couch* the Commission held that the physical exertions

of a state trooper involved in a high-speed automobile chase were not proven to be the major cause of the trooper's heart attack where there existed evidence that the trooper suffered from coronary artery disease. Suffice it to say that full Commission opinions are not precedent to this court. *Taylor v. Pfeiffer Plumbing & Heating Co.*, 8 Ark. App. 144, 648 S.W.2d 526 (1983). Furthermore, contrary to the evidence in *Couch*, Edwards presented medical evidence, which the Commission found credible, that the major cause of her heart attack was extreme emotional stress brought on by the extraordinary and unusual event of being the victim of an armed robbery.

■ Finally, appellants claim that Edwards did not prove that an "accident" was the major cause of her physical harm. Appellants argue that the armed robbery was not an "accident" within the meaning of our workers' compensation laws. However, appellants fail to cite any convincing authority to support this argument and it is not well taken; we therefore need not address it on appeal. *See Rainey v. Hartness*, 339 Ark. 293, 5 S.W.3d 410 (1999) (recognizing that an appellate court does not consider assertions of error that are unsupported by convincing legal authority or argument, unless it is apparent without further research that the argument is well taken). Furthermore, appellants do not show that the Commission made any ruling on this argument. When no ruling has been obtained below, we will not address the merits of the argument on appeal. *See W.W.C. Bingo v. Zwierzyn-ski*, 53 Ark. App. 288, 921 S.W.2d 954 (1996).

For these reasons, we affirm.

HART and GRIFFEN, JJ., agree.