Cite as 2019 Ark. App. 458

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-19-227

| | |
|---|---|
| GERDAU MACSTEEL AND GALLAGHER BASSETT SERVICES, INC. | **Opinion Delivered:** October 16, 2019 |
| APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G504197] |
| V. | |
| JASON HINDMARSH | |
| APPELLEE | AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellant Gerdau Macsteel ("Macsteel") appeals the decision of the Arkansas Workers' Compensation Commission (Commission) that determined appellee Jason Hindmarsh proved his entitlement to additional medical treatment and awarded him temporary-total disability (TTD) benefits. Macsteel argues that the Commission's decision was not supported by substantial evidence. We affirm.

## I. *Factual and Procedural Background*

Hindmarsh sustained an admittedly compensable lower-back injury in April 2015 while doing physical inventory for Macsteel. Hindmarsh received conservative treatment for his injury without positive results. He underwent a lumbar MRI scan in August 2015 and a similar MRI in November. Both scans indicated no disc bulges or protrusions and showed "no definite lumbar spine abnormality." Hindmarsh continued to experience

lower-back pain and eventually saw Dr. Kyle Mangels.[1] Dr. Mangels ordered another MRI, which was "read as being unremarkable" by Dr. Matthew Powers. Dr. Mangels also described the MRI findings as "basically negative." Nevertheless, because of Hindmarsh's complaints of unexplained pain, Dr. Mangels thought a discogram was warranted.[2]

Dr. Andrew Revelis performed the discogram of Hindmarsh's lumbar spine. He reported that the L4–5 disc had a normal retention of contrast within the nucleus of the disc, indicating a "normal nonpainful disc." Regarding the L5-S1 disc, however, Dr. Revelis opined that the disc was "unable to achieve a maximum pressure," which indicated "annular degeneration . . . with extravasation[3] of contrast into the outer third of the annulus and the left periannular space." Hindmarsh also reported concordant pain when the disc was injected that was consistent with the pain he usually experienced. Dr. Revelis's impressions were that L4–5 was a normal, nonpainful disc, but L5–S1 was a "painful, concordant degenerated disc." Dr. Revelis then sent Hindmarsh to Dr. Powers for a postdiscogram CT scan. Dr. Powers's report of the CT scan showed no abnormalities, however, and his review of the L5-S1 discogram found "an intranuclear injection of contrast material without evidence of posterior annular tear."

---

[1]Hindmarsh's request for treatment by Dr. Mangels was contested by Macsteel and was resolved at a hearing (unrelated to this appeal) before an administrative law judge.

[2]A discogram is a test in which a needle is placed into a disc between the vertebrae, contrast material is injected into the disc, and x-rays and CT scans are performed to see if the images correlate to the patient's pain.

[3]"Extravasation" means the leakage of fluids from where they are supposed to be into the surrounding tissue.

After the discogram and CT scan, Hindmarsh followed up with Dr. Mangels. Dr. Mangels reviewed the films, including the postdiscogram CT, and opined that Hindmarsh had disc disease at the L5–S1 level. He advised Hindmarsh about surgical options, including a posterior lumbar fusion, and Hindmarsh expressed a desire to consider surgery. Macsteel denied the requested surgical treatment, and Hindmarsh filed his workers'–compensation claim seeking approval for the requested treatment as well as TTD benefits.

Hindmarsh's claim proceeded to a hearing before an administrative law judge (ALJ), who found that Hindmarsh had proved his entitlement to additional medical treatment in the form of the surgery recommended by Dr. Mangels. The ALJ also found that Hindmarsh had demonstrated his entitlement to TTD benefits from November 15, 2017 through a date to be determined. The Commission affirmed and adopted this decision in a 2–1 opinion. Macsteel timely appealed.

II. *Standard of Review*

Normally, we review only the decision of the Commission, not that of the ALJ. *Queen v. Nortel Networks, Inc.*, 2012 Ark. App. 188, at 3. When, however, as here, the Commission affirms and adopts the ALJ's opinion, thereby making the findings and conclusions of the ALJ the Commission's findings and conclusions, our court considers both the ALJ's opinion and the Commission's opinion. *Mercy Hosp. Fort Smith v. Hendley*, 2015 Ark. App. 527.

Our court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Baxter Reg'l Med. Ctr. v. Ferris*, 2018 Ark. App. 625, 565 S.W.3d 149. Substantial evidence exists if reasonable

minds could reach the Commission's conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858.

### III. *Discussion*

### A. Additional Medical Benefits

In its first point on appeal, Macsteel argues that Hindmarsh failed to meet his burden of demonstrating his entitlement to additional medical treatment. Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires an employer to provide an employee with medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." However, a claimant bears the burden of proving entitlement to additional medical treatment. *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, 381 S.W.3d 869. What constitutes reasonably necessary treatment is a question of fact for the Commission. *Id.* Macsteel contends that fair-minded persons reviewing the facts could not come to the conclusion that the surgery recommended by Dr. Mangels was reasonable and necessary.

In support of its argument, Macsteel notes that Hindmarsh had three unremarkable MRIs over the course of two years, and it urges that "the only manifestation of Hindmarsh's injury are his complaints of pain."[4] Macsteel also points to the record it developed as part

---

[4]We acknowledge that compensable injuries must be established by medical evidence supported by objective findings, Ark. Code Ann. § 11-9-102(4)(D), and objective findings are those that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). Complaints of pain are not objective medical findings. *Ark. Sec'y of State v. Young*, 2018 Ark. App. 508, at 8, 559 S.W.3d 331, 336. We note, however, that a

4

of the ensuing litigation wherein it sought medical opinions from Dr. Stephen Cathey and Dr. David Reding.

Dr. Cathey testified that he reviewed Hindmarsh's medical records and did not observe any objective findings either clinically or radiographically. He dismissed the use of the discogram as a diagnostic tool, asserting that the MRI was "much more useful" and the discogram was not "necessarily reliable." He also noted that the follow-up CT scan after the discogram was "normal." In short, he could not recommend any kind of surgical intervention.

Likewise, Dr. Reding opined that Hindmarsh's multiple MRIs were normal and did not reflect any herniation or spinal-cord impingement. He also did not approve of using discograms as diagnostic tools, saying that he never felt they gave valid information about the cause of pain. In his opinion, the most valuable part of a discogram was the CT scan that was done afterward, and Hindmarsh's CT scan indicated his disc was normal. Dr. Reding's conclusion, after his review of the medical records, was that there was nothing in the records to indicate that surgery was warranted.

Macsteel acknowledges that the ALJ's decision was "entirely based on his acceptance of Dr. Mangels's opinions over those of Drs. Cathey and Reding." It argues, however, that the doctors' opinions were diametrically opposed, and it cites *Titan Oil & Gas, Inc. v. Shipley*, 257 Ark. 278, 298, 517 S.W.2d 210, 223 (1974), for its statement that "[w]here the evidence

---

claimant like Hindmarsh who has sustained a compensable injury is not required to offer objective medical evidence to prove entitlement to additional benefits. *Ark. Health Ctr. v. Burnett*, 2018 Ark. App. 427, at 9, 558 S.W.3d 408, 414.

tends equally to sustain two inconsistent propositions, the party having the burden of proof cannot prevail."

We do not find Macsteel's reliance on *Titan Oil & Gas* persuasive, primarily because *Titan Oil & Gas* was not a workers'-compensation case. In workers'-compensation cases, we have repeatedly held that it is the Commission's duty rather than ours to make credibility determinations, to weigh the evidence, and to resolve conflicts in medical opinions, evidence, and testimony. *See Ark. Dep't of Transp. v. Abercrombie*, 2019 Ark. App. 372, at 13, 584 S.W.3d 701, 710; *Ark. Highway & Transp. Dep't v. Work*, 2018 Ark. App. 600, 565 S.W.3d 138; *Gibson v. Wal-Mart Assocs., Inc.*, 2012 Ark. App. 560. In fact, the Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Lonoke Exceptional Sch., Inc. v. Coffman*, 2019 Ark. App. 80, at 3, 569 S.W.3d 378, 381. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Kroger Ltd. P'ship I v. Bess*, 2018 Ark. App. 404, at 6, 555 S.W.3d 417, 421; *Neal v. Sparks Reg'l Med. Ctr.*, 104 Ark. App. 97, 289 S.W.3d 163 (2008).

Macsteel nonetheless argues that the Commission erred by arbitrarily disregarding the medical evidence before it, contending that the Commission ignored Dr. Powers's interpretation of the postdiscogram CT as "normal." We disagree.

Macsteel is correct in this regard: the Commission may not arbitrarily disregard medical evidence. *See Coffman*, *supra*. This court has noted, however, that the Commission's failure to specifically discuss conflicting evidence does not mean that the evidence was arbitrarily disregarded when there is substantial evidence to support the Commission's

decision. *Raulston v. Waste Mgmt., Inc.*, 2012 Ark. App. 272, at 7, 411 S.W.3d 711, 715 (citing *Unimin Corp. v. Duncan*, 2010 Ark. App. 119). We conclude that substantial evidence supports the Commission's decision.

Here, the Commission was confronted with competing and differing medical opinions from multiple doctors. While both Dr. Cathey and Dr. Reding opined that surgery was not reasonable or necessary, both admitted that they did not personally examine or evaluate Hindmarsh, and neither of them actually reviewed the MRIs and CT films; instead, they relied only on the report from the radiologist. In contrast, Dr. Mangels did conduct physical examinations of Hindmarsh and personally reviewed the actual films of the postdiscogram CT scan.[5] The Commission thus found "under these particular circumstances that the opinion of Dr. Mangels is entitled to greater weight." The Commission thus weighed the evidence, gave greater credibility to Dr. Mangels's opinion for the valid reason that he was the only doctor to actually examine Hindmarsh, and concluded from the evidence before it that the requested surgery was reasonable and necessary. Macsteel is essentially asking this court to reweigh the evidence, which we simply do not do. *See Ark. State Military Dep't v. Jackson*, 2019 Ark. App. 92, at 8, 568 S.W.3d 811, 816 ("In asking us to overturn the Commission's decision, ASMD is requesting us, in essence, to reweigh the evidence and credibility findings made by the Commission. That is not our role."). We therefore affirm on this point.

---

[5]Dr. Mangels's note from the postdiscogram CT scan visit reflects that the "architecture at L5–S1 is definitely abnormal compared to L4–5 on the CT scan."

7

## B. TTD Benefits

In the closing paragraph of its brief, Macsteel asserts that the decision to award Hindmarsh TTD benefits was not supported by substantial evidence. It urges that Hindmarsh failed to prove that he suffered a period of time before, on, or after November 15, 2017, when he was unable to work because of his compensable injury. We do not address the merits of Macsteel's argument, however, because it is unsupported by any citation to convincing authority. When an appellant fails to cite any convincing authority to support its argument, we will not address it on appeal. *See Stutzman v. Baxter Healthcare Corp.*, 99 Ark. App. 19, 24–25, 256 S.W.3d 524, 527 (2007); *Family Dollar Stores, Inc. v. Edwards*, 97 Ark. App. 156, 162, 245 S.W.3d 181, 185 (2006); *Jones Truck Lines v. Pendergrass*, 90 Ark. App. 402, 409, 206 S.W.3d 272, 277 (2005) ("Assignments of error that are unsupported by convincing authority will not be considered.").

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Dover Dixon Horne PLLC*, by: *Joseph H. Purvis* and *Monte D. Estes*, for appellants.

*Medlock and Gramlich, LLP*, by: *M. Jered Medlock*, for appellee.