RITCHIE GROCERY *v.* Sherry K. GLASS

CA 99-1206                                    16 S.W.3d 289

Court of Appeals of Arkansas
Division IV
Opinion delivered May 10, 2000

*Bridges, Young, Matthews & Drake,* by: *Michael J. Dennis,* for appellant.

*Georgia L. Taylor,* for appellee.

ANDREE LAYTON ROAF, Judge. Ritchie Grocery (Ritchie) appeals from an order of the Arkansas Workers' Compensation Commission that awarded one of its employees, Sherry Glass, who was the victim of an armed robbery, medical benefits for treatment of post-traumatic-stress disorder (PTSD). On appeal, it argues that the Commission erred in its decision because it misinterpreted the Diagnostic Statistics Manual of Mental Disorders-IV (DSM-IV). We affirm.

On the night of January 14, 1998, Sherry Glass was attempting to lock the door to one of Ritchie's convenience stores, Rainbow Food Mart #3, where she worked as a night clerk, when a gun-wielding assailant surprised her from behind, forced his hand over her mouth, and ordered her not to scream. The assailant prodded her into a dark corner outside the store and pressed her into the corner with his body. A second man approached and demanded Glass's purse and keys. When the sound of an approaching vehicle caused her to look up, Glass's assailant placed his gun against her temple and ordered her to look down again. The second assailant

unlocked Glass's car door and took Glass into the store. He ordered her to turn off the alarm and open the safe. When he found out that she could retrieve only $300 and could not access the floor safe, he threatened her. She put her hands over her face, turned away from the robber, and silently prayed for her life. Glass heard the robber leave the store and turned around in time to see the tail lights of her car as it left the parking lot.

Glass started having nightmares about the robbery, and on February 9, 1998, she went through an intake appointment at a psychological counseling center, Neuropsychiatry Associates of South Arkansas. She was subsequently diagnosed with, and treated for, PTSD. Ritchie controverted her claim for workers' compensation benefits, denying that she had suffered a compensable injury.

At a July 31, 1998, hearing before an administrative law judge (ALJ), Glass's treating psychologist, Dr. Taryn Sue Van Guilder, testified that she began treating Glass for PTSD on a weekly basis, beginning on February 16, 1998. According to Dr. Van Guilder, Glass has experienced several of the symptoms associated with PTSD. She also stated that there was no other triggering event in Glass's history, and although Glass was treated for alcohol abuse some seven years before, she opined that alcohol abuse could not cause symptoms of PTSD, although it could "exacerbate" the symptoms. She also stated that Glass was still symptomatic and in treatment as of the day of the hearing, and she could not predict when Glass's symptoms would abate.

On cross-examination, Ritchie's attorney questioned Dr. Van Guilder at length about whether the symptoms that Glass exhibited conformed to the criteria required by DSM-IV. Dr. Van Guilder stated that Glass exhibited markedly diminished interest or participation in significant activities, although that symptom "remitted pretty quickly . . . [after] a month, maybe," but noted that Glass started feeling "a little bit better about that as things progressed." Dr. Van Guilder further noted that Glass exhibited a restricted range of affect, but conceded that this finding was relative to the general population and that she was not familiar with Glass's range of affect prior to the robbery. Finally, Dr. Van Guilder stated that Glass exhibited persistent avoidance of stimuli associated with the trauma, and she disagreed that the fact that Glass had visited the convenience store would detract from the validity of this diagnostic find-

ing because returning to the store was a specific part of Glass's therapy. Dr. Van Guilder concluded her testimony by stating that the nature of Glass's condition had changed over time, at least in part because of the more than five months of treatment that Glass had undergone.

Glass's husband, John Wayne Glass, testified that she began experiencing nightmares immediately after the robbery, which he considered "normal." He eventually urged her to seek help, however, when it seemed to be getting worse. John Glass further testified that after the robbery, "there definitely was a change. Sherry didn't want nobody touching her, you know. I mean, she was just acting strange."

In addition to testifying about the robbery, Glass stated that she had dreams about the incident, overreacted to benign situations such as when a person bumped into her, and was only looking for day-time employment. On cross-examination, she admitted to going back to the store "just a few times" including once to get her last paycheck, "a few times to purchase cigarettes or whatever," and an unspecified number of times to purchase beer. She noted however, that she was required to go to the store as part of her therapy.

John Benson, vice-president of Ritchie Grocery Company, testified that he obtained surveillance video that showed Glass in the store during the early evening hours on March 26, 1998, April 7, 1998, and April 14, 1998. Glass subsequently viewed the video tapes and noted that on April 7, 1998, she was accompanied by her daughter who also appeared on the tape. Glass's supervisor, Carol Dyson, testified that Glass had been in the store "two or three times" since the robbery. Dyson also stated that she worked "days" and that she only waited on Glass one of the times that she came to the store. Dyson also stated that store clerk Bobby Green waited on Glass the other times, and that she was present when Green was working "most of the time." Bobby Green, who stated that she only worked mornings, testified Glass may have been in the store as many as five times, but only twice by herself. Janice Gold, a clerk who worked the 2:00-to-11:00 shift at Rainbow, testified that she was present when Glass came into the store on March 26, 1998, and described the visit. On cross-examination, Gold stated that she was familiar with the times that Glass came into the store because Benson told her to keep a record of each visit. Gold was unable,

however, to explain why only three of the visits were depicted on video tape. She also admitted that it was apparent from the video that the April 7, 1998, visit was conducted during daylight hours.

Ritchie argues on appeal that the Commission misinterpreted and misapplied the diagnostic criteria in DSM-IV to conclude that Glass was suffering from post-traumatic stress disorder.[1] It contends that although some of the symptoms required to diagnose PTSD were arguably present, Dr. Van Guilder's testimony regarding the symptom of "markedly diminished interest or participation in significant activities" lasting "a month", maybe," was insufficient to establish the presence of the indicator for the requisite one-month period[2]. Further, regarding the symptom of restricted range of affect, it contends that Dr. Van Guilder had no basis to know how Glass's affect had changed. Finally, regarding the indicator of avoiding activities, people, and places that arouse recollections of the traumatic event, Ritchie contends that the videotape showing Glass's presence in the store and other eye-witness testimony contradicts Glass's own account that she was avoiding the store. This argument is without merit.

■ Arkansas's Workers' Compensation law states in pertinent part that: "No mental injury or illness under this section shall be compensable unless it is also diagnosed by a licensed psychiatrist or

---

[1] Under DSM-IV, the diagnostic criteria for PTSD is organized in six sections, all must be present for a diagnosis of PTSD. Ritchie only challenges the diagnostic criteria in one of the sections, Section C. Section C states:

Persistent avoidance of stimuli associated with the trauma and numbing of general responsiveness (not present before the trauma), as indicated by three (or more) of the following:

(1) efforts to avoid thoughts, feelings, or conversations associated with the trauma

(2) efforts to avoid activities, places, or people that arouse recollections of the trauma

(3) inability to recall an important aspect of the trauma

(4) markedly diminished interest or participation in significant activites

(5) feeling of detachment or estrangement from others

(6) restricted range of affect (e.g., unable to have loving feelings)

(7) sense of a foreshortened future (e.g., does not expect to have a career, marriage, children, or a normal life span)

Dr. Van Guilder only found symptoms 2, 4, and 5 supported the diagnosis.

[2] In DSM-IV, one of the diagnostic criteria for PTSD requires that the symptoms listed in Sections B, C, and D be present for "more than 1 month."

psychologist and unless the diagnosis of the condition meets the criteria established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders." Ark. Code Ann. § 11-9-113(a)(2) (Repl. 1996). When we review appeals from decisions of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if supported by substantial evidence. *Oliver v. Guardsmark, Inc.*, 68 Ark. App. 24, 3 S.W.3d 336 (1999). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Id.* The issue on appeal is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Id.*

■ Regarding Ritchie's argument that the duration of Glass's "markedly diminished interest or participation in significant activities" was not sufficiently long to satisfy Diagnostic Criteria E, the standard of review in workers' compensation cases prevents reversal on this issue. As noted above, we are required to view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision. While it is true that Dr. Van Guilder's assessment of the duration of the symptom in question was somewhat equivocal, to reach Ritchie's conclusion, this court would have to disregard Dr. Van Guilder's testimony that Glass was diagnosed in accordance with DSM-IV, which implies that the symptom was present for more than a month, and then conclude that the Commission erred as a matter of law in interpreting the phrase "a month, maybe" as meaning less than a month. The Commission is empowered to conduct such a *de novo* review; this court is not.

■ Similarly without merit is Ritchie's contention that because Dr. Van Guilder had no basis to know how Glass's affect had changed, restricted range of affect could not be counted as valid diagnostic criteria. In making this argument, Ritchie ignores the fact that Dr. Van Guilder is a trained professional who was qualified to recognize a flat affect and give an opinion as to its presence. Moreover, DSM-IV states as an example of restricted range of affect, "e.g., unable to have loving feelings." As noted above, the Commission had before it the testimony of Glass's husband of eighteen years who stated that he sought treatment for Glass after

the robbery because she would not allow anyone to touch her, which certainly would support a conclusion that Glass was not demonstrating loving feelings.

■ Finally, Ritchie's assertion that the indicator of avoiding activities, people, and places that arouse recollections of the traumatic event was not present simply because Glass was observed going to the store, is disingenuous at best. Not only was Ritchie's testimony regarding the number of times that Glass actually visited the store not clearly inconsistent with what Glass had reported, Dr. Van Guilder testified that part of Glass's therapy was to make such visits. Moreover, Dr. Van Guilder testified that Glass's condition was improving; as noted above, under DSM-IV, the symptom need only to be present for one month to be a valid diagnostic criteria.

Affirmed.

HART and JENNINGS, JJ., agree.