WHEELER CONSTRUCTION COMPANY *v.*
Raymond L. ARMSTRONG

CA 00-875                                                     41 S.W.3d 822

Court of Appeals of Arkansas
Division III
Opinion delivered March 14, 2001

*Laser Law Firm, P.A.*, by: *Frank B. Newell*, for appellant.

*Raymond L. Armstrong*, for appellee.

OLLY NEAL, Judge. Appellant, Wheeler Construction Company, appeals the Workers' Compensation Commission's award of benefits to appellee, Raymond Armstrong, for a burn injury he received while working for appellant. Appellant makes two arguments in this appeal. For its first point on appeal, appellant contends that the Commission erred in determining that Armstrong is entitled to temporary total disability benefits because he failed to demonstrate a total incapacity to earn wages during his healing period. For its second point on appeal, appellant argues that Arkansas Code Annotated section 11-9-812 (Repl. 1996) should be interpreted to permit an inmate's spouse or minor dependent child to receive permanent disability benefits or permanent partial disability benefits, but not temporary total disability benefits, since the latter are intended to replace the earnings of a worker who, but for his injury, would be able to earn income.

Both parties agreed that Armstrong suffered a compensable injury on August 8, 1996, when he spilled hot tar on his right arm. Armstrong initially sought medical treatment at the Ouachita County Medical Center emergency room. He continued medical treatment at the medical center through the month of August. During that period, appellant continued to pay Armstrong regular wages based on the amount of work performed by his coworkers. Appellant discontinued paying Armstrong wages after he was incarcerated in the Arkansas Department of Correction on August 30, 1996.

Dr. George Gray III treated Armstrong while he was incarcerated. Dr. Gray treated Armstrong's burn with debridement, antibiotics, and analgesics. Over the course of the treatment, Armstrong developed a keloid over his forearm which Dr. Gray initially attempted to treat with topical florinated corocosteroids. After this course of treatment proved unsuccessful, Dr. Gray injected the keloid with Kenalog on at least two occasions. Because Armstrong's condition remained stagnant, Dr. Gray resorted to $CO_2$ laser destruction of the keloid in February 1997. Dr. Gray surmised that Armstrong would need at least three months before he could return to work and that he could not determine when Armstrong could

return to work with no restrictions. While incarcerated, Armstrong returned to the workforce operating a sewing machine at the prison on June 9, 1997. Armstrong contends that he is entitled to temporary total disability benefits from August 8, 1996, through May 30, 1997.

Pursuant to Arkansas Code Annotated section 11-9-521(a) (Repl. 1996), the Commission determined that Armstrong was entitled to the benefits that he sought because he remained in his healing period from August 8, 1996 through May 30, 1997, and because he had not returned to work. The Commission also determined that his dependent daughter, Ashley Armstrong, properly petitioned the Commission to receive the benefits to which her father was entitled while he was incarcerated pursuant to Arkansas Code Annotated section 11-9-812(a)(1).

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Ritchie Grocery v. Glass*, 70 Ark. App. 22, 16 S.W.3d 289 (2000). Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Oliver v. Guardsmark, Inc.*, 68 Ark. App. 24, 3 S.W.3d 336 (1999). The Commission's decision should not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Johnson v. Democrat Printing & Lithograph*, 57 Ark. App. 274, 944 S.W.2d 138 (1997).

### Entitlement to Disability Benefits

In this appeal, appellant argues that Armstrong is not entitled to disability benefits because he has failed to demonstrate an incapacity to earn wages during the entire period of August 8, 1996, until May 30, 1997. Appellant correctly notes that there is no mention of Armstrong's ability or inability to work in any documents prior to Dr. Gray's note regarding the laser surgery performed in February 1997.

Prior to the amendments of Act 796 of 1993, Arkansas Code Annotated section 11-9-521(a) provided:

> An employee who sustains a permanent injury scheduled in this section shall receive, *in addition to compensation for the healing period,* weekly benefits in the amount of the permanent partial disability rate attributable to the injury, for that period of time set out in the following schedules. (Emphasis supplied.)

Before the passage of Act 796, our supreme court defined temporary total disability as "that period within the healing period in which the employee suffers a total incapacity to earn wages." *Arkansas State Highway & Transp. Dep't v. Breshears,* 272 Ark. 244, 246, 613 S.W.2d 392, 393 (1981). Thus, the healing period and the period of temporary total disability are not one and the same.

Arkansas Code Annotated section 11-9-521(a) now provides:

> An employee who sustains a permanent compensable injury scheduled in this section shall receive, *in addition to compensation for temporary total and temporary partial benefits during the healing period or until the employee returns to work, whichever occurs first,* weekly benefits in the amount of the permanent partial disability rate attributable to the injury, for that period of time set out in the following schedule....(Emphasis supplied.)

Appellant contends that the amendment to section 11-9-521(a) codified the supreme court's decision in *Breshears* and requires a claimant seeking temporary total disability benefits to show (1) that he remains in his healing period, (2) that he is totally incapacitated to earn wages, and (3) that he has not returned to work.

The Commission disagreed with appellant's interpretation of the General Assembly's intentions in amending section 11-9-521(a). The Commission concluded that the legislature did not intend to codify *Breshears* based on three distinct reasons. First, the Commission explained that notably absent from the amended statute is any use of the term "disability" or the phrase "incapacity to earn wages." The Commission concluded that if the General Assembly had intended to amend the law to require a claimant to specifically prove "an incapacity to earn" or a "disability" as a prerequisite to temporary benefits for a scheduled injury, it would have used some language to that effect or would have at least referenced the *Breshears* decision. Second, the Commission determined that to the extent the General Assembly had some prior decision in mind when amending the section, it clearly meant to overrule the Commission's decisions interpreting the section to permit a worker to receive temporary total benefits even after returning to work.

Finally, the Commission concluded that appellant's argument appeared contrary to the supreme court's holding in *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999), that a loss in earnings on account of a scheduled injury is conclusively presumed under section 11-9-521(a).

■ ■ We agree with the Commission's interpretation of section 11-9-521(a). The provisions of the Workers' Compensation Act were formerly construed liberally in accordance with the act's remedial purpose; Act 796, however, changed the former practice and mandated that the Commission and the courts construe the provisions strictly. *See Torrey v. City of Fort Smith*, 55 Ark. App. 226, 934 S.W.2d 237 (1996). *See also* Ark. Code Ann. § 11-9-704(c)(3) (stating that administrative law judges, the commission, and any reviewing courts are to construe the provisions of the workers' compensation law strictly). Our supreme court has defined "strict construction" as narrow construction. *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998). Strict construction requires that nothing be taken as intended that is not clearly expressed. *Thomas v. State*, 315 Ark. 79, 864 S.W.2d 835 (1993). The doctrine of strict construction is to use the plain meaning of the language employed. *Holaday v. Fraker*, 323 Ark. 522, 915 S.W.2d 280 (1996).

■ The court's view of strict construction is supported by the express statements of the General Assembly in passing Act 796. In section 35 of Act 796, the legislature expressly provided:

> The Seventy-Ninth General Assembly realizes that the Arkansas Workers' Compensation statutes must be revised and amended from time to time. Unfortunately many of the changes made by this act were necessary because Administrative Law Judges, the Workers' Compensation Commission, and the Arkansas Courts have continually broadened the scope and eroded the purpose of the Worker's Compensation statutes of this state....When, and if, the Worker's Compensation statutes of this state need to be changed the General Assembly acknowledges its responsibility to do so. It is the specific intent of the Seventy-Ninth General Assembly to repeal, annul, and hold for naught all prior opinions or decisions of any Administrative Law Judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision in this act. *In the future if such things as the Statute of Limitations; the standard of review by the Workers' Compensation Commission or courts; the extent to which any physical condition, injury or disease should be excluded from or added to coverage by the law; or need to be liberalized, broadened, or narrowed it shall be addressed by the General*

*Assembly and should not be done by Administrative Law Judges, the Workers' Compensation Commission or the courts.* (Emphasis supplied.)

In light of Arkansas Code Annotated section 11-9-704(c)(3) and section 35 of Act 796, we must construe Arkansas Code Annotated section 11-9-521(a) using the plain meaning of the language that the General Assembly employed. The statute expressly provides that for scheduled permanent injuries the injured employee is to receive compensation for temporary total or temporary partial disability during the healing period or until the employee returns to work, whichever occurs first. Conspicuously absent from the statute is any indication that the injured employee show an incapacity to earn wages as a requirement to receiving temporary benefits. This absence is key to any construction of the provision. We hold that the plain meaning of the language employed indicates that an employee who has suffered a scheduled injury is to receive temporary total or temporary partial disability benefits during his healing period or until he returns to work regardless of whether he has demonstrated that he is actually incapacitated from earning wages.

Substantial evidence supports the Commission's finding that Armstrong is entitled to temporary total disability benefits from August 8, 1996, until May 30, 1997. There is no dispute that Armstrong did not return to work prior to May 30, 1997. Thus, the only issue in dispute is whether Armstrong remained within his healing period.

■ The healing period is that period for healing of the injury which continues until the employee is as far restored as the permanent character of the injury will permit. *Nix v. Wilson World Hotel,* 46 Ark. App. 303, 879 S.W.2d 457 (1994). If the underlying condition causing the disability has become more stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. *Id.* Whether an employee's healing period has ended is a factual determination to be made by the Commission. *Ketcher Roofing Co. v. Johnson,* 50 Ark. App. 63, 901 S.W.2d 25 (1995).

■ The Commission concluded that appellee's healing period did not end before he returned to work in June 1997. Armstrong's testimony and exhibits indicate that Dr. Gray continuously provided medical treatment to treat Armstrong's burn and resulting keloid formation. The evidence further indicates that Armstrong did not fully recover from his burns and resulting complications until he recovered from the laser surgery to remove the keloid formation.

Based on this evidence, we cannot say that there is no substantial evidence to support the Commission's finding.

*Applicability of Ark. Code Ann. § 11-9-812(a)(1)*

Arkansas Code Annotated section 11-9-812(a)(1) provides:

> When any person who receives workers' compensation benefits is incarcerated in an institution under the control of the Department of Correction, the inmate's spouse or, if no spouse, the inmate's minor dependent children, may petition the Workers' Compensation Commission to award to the spouse or minor dependent children the inmate's workers' compensation weekly disability benefits for the period of the claimant's incarceration.

Appellant argues that Armstrong's daughter should not be allowed to recover benefits pursuant to this section, because Armstrong's incarceration, and not his injury, prevented him from earning wages. Appellant argues that temporary total disability benefits are intended to replace the earnings of a worker who, but for his injury, would be able to earn income. Thus, appellant's argument continues, because Armstrong could not earn wages after August 30, 1996, due to his incarceration, his inability to earn income is directly attributable to his criminal conduct and not to his injury.

No cases construing section 11-9-812 have been found. As we have construed section 11-9-521, however, whether an injured employee is incarcerated is immaterial as long as that employee remains within his healing period and has not returned to work. Because we have concluded that substantial evidence supports the Commission's decision that Armstrong is entitled to temporary total disability benefits, we also conclude that section 11-9-812(a)(1) is applicable to the instant action and affirm the decision of the Commission.

Affirmed.

STROUD, C.J., and JENNINGS, J., agree