Jessica NEAL  *v.*  SPARKS REGIONAL MEDICAL CENTER
and Management Claims Solutions

CA 08-557                                                289 S.W.3d 163

Court of Appeals of Arkansas
Opinion delivered November 19, 2008

*Walker, Shock & Harp, PLLC,* by: *Eddie H. Walker, Jr.,* for
appellant.

*Smith, Maurras, Cohen, Redd & Horan, PLC,* by: *R. Scott
Zuerker,* for appellees.

DAVID M. GLOVER, Judge. This is a workers' compensation
case in which appellant, Jessica Neal, suffered an admit-

tedly compensable injury on May 8, 2006, while working for Sparks Regional Medical Center. The parties agreed that appellant injured her shoulder; however, they disagreed about a neck injury, and appellee medical center denied that claim. In addition, appellant claimed entitlement to either temporary-total or temporary-partial disability benefits for the period May 10, 2006 to September 8, 2006. The ALJ found that appellant sustained her burden of proving that she suffered a compensable neck injury, but concluded that she failed to prove entitlement to either temporary-total or temporary-partial disability benefits for the designated period. The Commission affirmed and adopted the ALJ's decision. In her appeal to this court, appellant contends that the Commission erred in concluding that she is not entitled to either temporary-total or temporary-partial disability benefits. Appellees did not cross-appeal the compensability of the neck injury. We affirm.

*Point of Appeal*

The Commission erred in determining that the claimant failed to prove by a preponderance of the evidence entitlement to additional temporary disability benefits when the claimant was under active medical treatment and under activity restrictions placed on her by her treating physician and Sparks's benefits person testified that Sparks made no attempt to make work available in regard to a component of the claimant's job that the claimant testified accounted for at least seventy percent (70%) of her earnings.

The hearing before the ALJ took place on November 16, 2006. Neal testified that she was thirty-one years old; that she was a registered nurse; that on May 8, 2006, she was assisting with a patient when she felt an electrical shock in the back of her shoulder; that in addition to shoulder pain, she also experienced cervical spasms; and that on May 10, 2006, Dr. Duane Lukasek put her on light duty. She denied being offered any light duty on May 10, 2006, but testified that she was offered an office job the next day. She explained that she had worked a twelve-hour shift before she saw Dr. Lukasek and that she did not get the message about the office job because she was asleep. She stated that she worked for Dr. Sills in the clinic on May 21, taking vital signs and performing other clinic tasks; and that she was not supposed to work there the next day because she was supposed to work in the laundry room. She stated that she was sent to the laundry room because she was "unable to make" the first day (May 10) of the clinic work. She

testified that the laundry-room job was excruciatingly painful; that it was hard for her to function because her left shoulder was "spasming"; that she finished as much as she could before her scheduled physical-therapy appointment; that the required movements in the laundry room caused severe spasms in her shoulder and neck; and that she reported that fact to Tina Good, the benefits specialist, but they did not offer her a different job. She said that she was still under active medical treatment at the time.

Appellant explained that she was a critical-care nurse at the time of her injury and that she had been employed at Sparks for four years. She stated that she had seen other injured RNs placed in the monitor room and in secretarial and unit-nurse jobs; she said that she was told the laundry-room job was the only available light-duty assignment. She stated that from the first day they offered her the laundry-room job until when she returned to work in September, they never offered her anything other than the laundry-room job and that she was under active medical treatment during that entire period of time.

Appellant explained that she made $82,000 a year as an RN the year before her injury and that she made that amount of money by working more than sixty hours a week. She stated that she was losing $1500 to $1800 a week by being off work; that after she saw Dr. Lukasek, he referred her to Dr. Edward Rhomberg; that Dr. Rhomberg took her off work on June 15, 2006; that he wrote her a note later in June returning her to work but that no one from his office examined her after June 15, 2006; that her condition did not get any better in that period of time; and that she did not know how he came up with the return to work without seeing her again.

Appellant said that she contacted Dr. Rhomberg in September and asked him to let her go back to work. She stated that she was allowed to go back to work after she completed a functional capacity evaluation. She stated that she was still not completely recovered from the injuries that she sustained in May 2006 because she was still having pain in her shoulder, numbness, tingling, radiculopathy in her hands and arms, and cervical spasms.

Appellant stated that she has never seen a slip from any of her doctors that specifically said she was released to go to work in the laundry room. She acknowledged that Dr. Lukasek released her to light-duty work when she saw him on May 10. She stated that she did not recall being offered a clinic job at Preferred South on May 20 but that she did work with Dr. Sills on May 21. She confirmed

that she was scheduled to work Saturday and Sunday at the clinic, but that she called and let them know that she could not make it Saturday because she was in pain and had to take Flexeril and Lorcet. She also stated that she did not recall being contacted to work as a clinic nurse in Dr. Jackson's office. She said there was nothing about her physical condition that would prevent her from doing that kind of job. She recalled that she was contacted by Sharon Beecham about a clinic assignment in July but that she told Beecham she could not do the job because of everything that was going on. She said part of her problem was that she had migraines from the spasms and that she told Beecham she could not do the job unless they gave her a dark place to lie down.

Appellant testified that during the period from May 10 to September 8, Sparks made the laundry-room job available, and that during various periods of time certain clinic jobs were available. She said that she could not do the laundry-room job because of her pain and spasms and that she did not do the clinic jobs because she was on prescription narcotics every four hours, which still did not relieve the pain. She denied painting a fence during that period of time but did acknowledge painting a mail box. She stated that her restrictions "were something about not using her left shoulder or a certain weight limit," which she thought started at ten pounds and was then raised to fifteen. Her testimony was that the repetitive motion, not the weight of the quilts, caused her pain in the laundry-room job.

Appellant explained that the majority of her income in the prior year came from per diem shift work, and that she was not eligible for per diem shifts from the minute she was hurt. Specifically, by her testimony, the work Sparks made available during the period in question was only to replace her normal hourly work; no effort was made to replace her per diem earnings, which accounted for the majority of her income. She testified that she cannot do patient care under her licensure while she is under the influence of narcotics. She stated that she was not able to work during the period from May 10 to September 8; that the pain got worse and she was not able to function without the pain medications; that she had done physical therapy; that her condition gradually improved to where she could start weaning herself off the narcotic pain medications; and that she was off them by the end of August.

Tina Good, the benefits specialist, who also scheduled light-duty work at Sparks, testified that the first time she offered appellant light duty was shortly after her injury; that she left a

message for appellant to report to the Van Buren clinic at 8:00 a.m. on Thursday morning; that she heard from appellant around 1:30 p.m.; and that appellant told her she had been asleep the entire time. She said that she found another clinic job for appellant at Preferred South; that she called appellant, who told her she would do that job; that she scheduled appellant to work Saturday and Sunday (May 20 and 21); that appellant did not show up to work the shift on May 20; and that when she called appellant, appellant told her she had contacted the nursing office and told them she was too sick to come to work. Good testified that she told appellant the clinics found her too unreliable and that the only alternative was laundry-room work. She said appellant worked in the laundry room for six hours one day but did not show up the next day; that when she called appellant, appellant told her she could not do the laundry-room job.

Good testified that she offered appellant another clinic job in Dr. Jackson's clinic on June 1 or 2; that she explained to appellant that the job would last a couple of months; and that appellant told her she did not feel that she could do that job. She said that during the middle of July, another clinic position was offered to appellant by Ms. Beecham, and that appellant did not accept that position either. Good explained that per diem shifts are not available until a person works thirty-two hours every two weeks; that appellant never satisfied that requirement during the period of time in question; and that even if she had satisfied that requirement, she could not have gone back to her normal nursing duties to do the per diem shifts. She testified that it was never Sparks's intention to replace the per diem shift component of appellant's wages when they offered her the various post-injury jobs.

### Standard of Review

When reviewing a decision of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Finley v. Farm Cat, Inc.*, 103 Ark. App. 292, 288 S.W.3d 685 (2008). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm. *Id.* Where the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the Commis-

sion's decision displays a substantial basis for the denial of relief. *Parson v. Arkansas Methodist Hosp.*, 103 Ark. App. 178, 287 S.W.3d 645 (2008). A substantial basis exists if fair-minded persons could reach the same conclusion when considering the same facts. *Id.*

In rejecting appellant's claim for temporary-total and temporary-partial benefits, the ALJ explained:

> I further find that the claimant has failed to prove by a preponderance of the evidence that she is entitled to additional temporary total disability from May 10, 2006 to September 8, 2006. The claimant has testified, and it has been stipulated by the parties, that she did work six (6) hours for the respondent on May 25, 2006 and four and a half (4½) hours on May 21, 2006. The claimant testified that she was able to do the clinic work when she worked on May 25, 2006, and the respondent had offered her work in the clinic at least twice according to the testimony. It is further noted that one of these clinic jobs had an estimated time of employment of at least two months which the claimant turned down without even trying. There has been some discussion about the laundry room work which the claimant was assigned to initially. The claimant testified that she was not able to do this work because of its repetitive nature. This laundry room job certainly fell within the weight restriction which was imposed upon her and it could be done using one hand if the claimant would have allowed herself time to adjust to the job. Although the claimant has exhibited an outstanding work ethic prior to her May 8, 2006 injury, her willingness to return to light duty jobs offered to her was notably negative. Therefore, no additional temporary total disability will be awarded in this matter.
>
> The claimant during testimony raised the issue of whether she would be entitled to temporary partial disability from May 10, 2006 to September 8, 2006. The claimant testified that by choice she had contracted to work less than forty hours a week, but even with this reduced rate it would qualify her for working the per diem shifts. It was my understanding from the testimony that these per diem shifts are not guaranteed and would not be considered a part of an individual's contract of hire.
>
> . . . .
>
> It seems quite clear that [section 11-9-520] was written in contemplation of a person returning to work but at lesser hours or at a lesser hourly rate than what their contract of hire was at the time of her injury. In the claimant's case she refused to return to work at all.

. . . .

I have previously found that the claimant was not entitled to temporary total disability because she would not accept employment offered to her by the respondents. Therefore, I find that the claimant has refused employment offered to her by the respondent which was within her restrictions and which she has even testified that she was capable of performing such as the clinic work. Therefore, I find that the claimant has failed to prove by a preponderance of the evidence that she is entitled to temporary partial disability from May 10, 2006 to September 8, 2006.

Appellant contends that the "two (2) issues in this case revolve around whether Neal was physically able to perform a job that Sparks provided in the laundry room and whether Ark. Code Ann. § 11-9-526 bars Neal from receiving temporary partial disability benefits if the laundry room job was one that she was able to perform." She argues that there is no question that she could not perform the laundry-room job because she actually tried it and was not able to do so and that she knew of no doctor's slip that specifically released her to perform the laundry-room job. Therefore, she argues that there was no substantial evidence to support a conclusion that the laundry-room job was within her physical capabilities.

Temporary-total disability is that period within the healing period in which the employee suffers a total incapacity to earn wages. *Owens Planting Co. v. Graham*, 102 Ark. App. 299, 284 S.W.3d 537 (2008). In addition, however, Arkansas Code Annotated section 11-9-526 provides:

Compensation for disability — Refusal of employee to accept employment.

If any injured employee refuses employment suitable to his or her *capacity* offered to or procured for him or her, he or she shall not be entitled to *any* compensation during the continuance of the refusal, unless in the opinion of the Workers' Compensation Commission, the refusal is justifiable.

(Emphasis added.) In *Coleman v. Pro Transp., Inc.*, 97 Ark. App. 338, 348, 249 S.W.3d 149, 156-57 (2007), our court explained:

Pro Transportation contends that the Commission's decision was supported by substantial evidence. Pro Transportation points

out that Coleman was offered modified-duty employment via certified letter dated November 27, 2002, and that he never reported for work and never provided any medical justification for his refusal. Arkansas Code Annotated section 11-9-526 (Repl. 2002) makes it clear that:

> If any injured employee refuses employment suitable to his capacity offered to or procured for him, he shall not be entitled to any compensation during the continuance of his refusal, unless in the eyes of the Workers' Compensation Commission, the refusal is justifiable.

> Coleman offered no persuasive evidence or argument regarding his refusal to return to light-duty employment in November 2002.

Here, appellant's argument focuses on the laundry-room job that was offered to her and her contention that it was not within her capacity to perform that job. She tries to minimize the fact that clinic jobs were also offered to her, by contending that she was taking narcotic medications and could not perform patient care while under the influence of those medications. The problem with her argument is that, regardless of her contention that she could not physically perform the laundry-room job, she testified that the clinic jobs involved tasks that she *could* perform physically,. *e.g.*, taking vital signs and escorting patients to exam rooms. While her narcotic-medication argument might carry greater weight if she were trying to return to the tasks of critical-care nursing, we agree that it is not convincing under the circumstances without more of a demonstration that her prescribed medications would pose a danger to patients in the clinic settings in which she was offered jobs.

Appellant further contends that even if it were somehow determined that she was able to do the work that was made available to her, she should still be entitled to temporary partial-disability benefits because of the difference between the wages she would have earned doing the work that Sparks offered her and the wages she was earning at the time of her injury. We disagree.

Arkansas Code Annotated section 11-9-520 provides:

Compensation for disability — Temporary partial disability.

> In case of temporary partial disability resulting in the decrease of the injured employee's *average weekly wage*, there shall be paid to the

employee sixty-six and two-thirds percent (66 2/3%) of the difference between the employee's *average weekly wage* prior to the accident and his or her *wage-earning capacity* after the injury.

(Emphasis added.) This section contemplates a situation in which an employee returns to work but, because of a temporary-partial disability, is not earning the same wages as before the injury. Here, as previously discussed, section 11-9-526 barred appellant from receiving temporary-total-disability benefits for the designated period of time because she refused suitable employment that was within her capacity to perform. That same rationale applies to bar her from receiving temporary-partial disability. In short, the ALJ's decision, which was affirmed and adopted by the Commission, displays a substantial basis for the denial of relief and therefore the decision is supported by substantial evidence and must be affirmed.

Affirmed.

ROBBINS and HEFFLEY, JJ., agree.