2009 Ark. App. 866

**Charles JOHNSON, Appellant**

v.

**ABILITIES UNLIMITED, INC. and Commerce & Industry Insurance Co., Appellees.**

**No. CA 09–832.**

Court of Appeals of Arkansas.

Dec. 16, 2009.

Moore & Giles, LLP, Texarkana, by: Greg Giles, for appellant.

Worley, Wood & Parrish, P.A., Little Rock, by: Jarrod S. Parrish, for appellees.

DAVID M. GLOVER, Judge.

With the exception of one issue, the Workers' Compensation Commission affirmed and adopted the Administrative Law Judge's opinion denying appellant, Charles Johnson, additional medical treatment and temporary-total-disability benefits from December 5, 2006, to a date yet to be determined. The Commission reversed the ALJ's determination that Johnson had not proved that he was a full-time employee and therefore his average weekly wage should be based on his actual hours worked instead of a thirty-seven-and-one-half-hour workweek. The Commission found instead that Johnson's average weekly wage should be based on a full-time workweek pursuant to Ark.Code Ann. § 11–9–518(a)(1) (Repl.2002). Johnson appeals, arguing that the Commission's decision denying him additional medical treatment and temporary-total-disability benefits is not supported by substantial evidence. Appellees cross-appeal, arguing that the Commission's decision to base Johnson's wage-rate on a full-time workweek is not supported by substantial evidence. We affirm on direct appeal and cross-appeal.

*Standard of Review*

This court set forth its well-settled standard of review in workers' compensation cases in *Neal v. Sparks Regional Medical Center*, 104 Ark.App. 97, 101–02, 289 S.W.3d 163, 167 (2008) (citations omitted):

When reviewing a decision of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and af-

firm that decision if it is supported by substantial evidence. The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm. Where the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief. A substantial basis exists if fair-minded persons could reach the same conclusion when considering the same facts.

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission, and when there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Cedar Chem. Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008). The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.*

### Factual Background

On September 11, 2006, Johnson, while working as a driver for Abilities Unlimited, was involved in a motor-vehicle accident. Johnson was thrown around the cab of the truck, but he believed he was okay immediately after the accident and did not seek medical treatment at that time; however, he began to experience lower-back pain that night. Johnson was seen by Dr. Rodney Griffin on September 13, 2006. Dr. Griffin took an x-ray, noting, "Disc spaces are normal. No bony abnormalities. Straightening of the lordotic curve suggestive of paraspinous muscle spasms." Dr. Griffin diagnosed Johnson with low-back strain and prescribed medication and physical therapy. On October 30, 2006, Dr. Griffin returned Johnson to work with a one-week restriction of no heavy lifting, then returning to regular duty.

Johnson began treating with Dr. Rob Butler, a chiropractor, on November 6, 2006, and continued treatment until November 29, 2006. On November 30, 2006, he underwent an MRI of the lumbar spine, which indicated a small broad-based protrusion at L5–S1. Dr. Butler attempted to refer Johnson to Dr. Reza Shahim for a neurological exam, but the workers' compensation carrier would not approve the referral.

Johnson returned to Dr. Griffin on December 7, 2006. At that time, Dr. Griffin also recommended a neurological consultation, but also returned Johnson to work with a ten-pound lifting restriction. In his office note of that date, Dr. Griffin noted that the MRI demonstrated a bulging at L5–S1 without significant pressure.

Johnson was seen by Dr. Steven Cathey for an independent medical examination on January 18, 2007. Dr. Cathey noted that the November 30, 2006 MRI was entirely negative; he stated that, although the MRI suggested a small disc protrusion at L5–S1 and that there was some mild degenerative disc disease at L5–S1, there was certainly no sign of disc herniation or nerve-root compression and that the changes on the MRI clearly preexisted the motor-vehicle accident of September 2006. Dr. Cathey believed that Johnson had suffered a musculoskeletal strain in the motor-vehicle accident. Likewise, he was of the opinion that there was no indication for neurological intervention because Johnson had a normal neurological exam and a normal MRI scan, and there was nothing

further needed in the way of treatment. Dr. Cathey also found that Johnson had reached maximum medical improvement.

Johnson asked for and received a change of authorized-treating physician to Dr. Shailesh Vora. Dr. Vora ordered a second MRI, which was performed on November 26, 2007; it showed an L5–S1 disc posterior herniation with impingement of the neural foramina bilaterally and straightening of the lumbar-spinal curvature. Dr. Vora prescribed medications and took Johnson off work until January 15, 2008. It was Dr. Vora's opinion that Johnson needed to undergo a nerve conduction/EMG of the lower extremities, low-back physical therapy, a TENS unit, cortisone injections, and an epidural in the low back. Johnson was seen by Dr. Vora again on January 14, 2008, at which time Dr. Vora continued medications and recommended the same tests and treatment. Dr. Vora took Johnson off work until April 1, 2008.

Through deposition, Dr. Vora testified that the findings on the November 2007 MRI appeared to be a worsening of the problems found in the 2006 MRI; that it was the same problem—only more severe. It was Dr. Vora's opinion that Johnson would be unable to perform job duties eight hours per day without symptomology.

Dr. Cathey was given an opportunity to review Dr. Vora's deposition and clinic notes. In a letter dated April 12, 2008, Dr. Cathey stood by his opinion that the November 30, 2006 MRI was negative. While there was some mild degenerative-disc disease, he saw no structural abnormalities that could be related to the September 11, 2006 motor-vehicle accident. It was Dr. Cathey's opinion that, if there had not been a new injury, and if the MRI scan was unchanged from the initial study, he saw no indication for any of the treatment

options or testing being suggested by Dr. Vora. Dr. Cathey stated that if there was a new injury with new structural abnormalities in Johnson's low back, he would defer to Dr. Vora's more recent evaluation; but at the time he examined Johnson in January 2007, he did not see an indication for additional treatment or testing.

At the hearing, Johnson testified that when he presented his light-duty, ten-pound lifting restriction on December 8, 2006, to Abilities Unlimited, he was told that if he could not drive the truck, which was the job he was hired for, there was no place for him. However Sandra Marler, the executive director of Abilities Unlimited, testified in direct contravention of Johnson's testimony, stating that she offered Johnson a job running a baler that would be within his work restrictions because she would provide him assistance with the lifting portion of the job; however, Johnson refused the job.

## I. *Direct Appeal*

### A. Denial of Additional Medical Treatment

 Employers are required to provide such medical treatment in connection with a compensable injury as is reasonably necessary. *Wal–Mart Stores, Inc. v. Brown,* 82 Ark.App. 600, 120 S.W.3d 153 (2003). What constitutes reasonable and necessary medical treatment is a question of fact for the Commission. *Wackenhut Corp. v. Jones,* 73 Ark.App. 158, 40 S.W.3d 333 (2001).

 Johnson argues that the treatment and testing suggested by Dr. Vora is reasonable and necessary, and that the Commission erred in adopting the ALJ's opinion that such additional treatment was for a condition that was not causally related to the compensable back injury. He argues that Dr. Cathey's opinion that the 2006

MRI was normal is an error of fact because the MRI clearly stated that there was a finding of a small broad-based protrusion at the L5–S1 level, and that Dr. Griffin noted that there was "significant pressure" at L5–S1.

Dr. Cathey's clinic note of January 18, 2007, noted both a small disc protrusion and very mild degenerative-disc disease at L5–S1; however, he stated that the changes shown on the November 2006 MRI clearly preexisted the September 2006 accident. Johnson is mistaken when he asserts that Dr. Griffin noted "significant pressure" at L5–S1. As appellees point out, the phrase "significant pressure" is preceded by the symbol "s̄," which means "without." *Dorland's Illustrated Medical Dictionary*, 2149 (31st ed., 2007). Therefore, Dr. Griffin's clinical note did not contradict Dr. Cathey's findings.

The ALJ found that Dr. Vora's testimony established by a preponderance of the evidence that the November 2007 MRI detected a herniated disc with left-S1 nerve-root impingement. However, the ALJ also found credible Dr. Cathey's January 2007 evaluation in which Dr. Cathey determined that Johnson had suffered only a musculoskeletal injury in the 2006 motor-vehicle accident. The ALJ found that Dr. Cathey's January 2007 examination, unlike Dr. Vora's September 2007 examination, detected no sign of lumbar radiculopathy or other neurological abnormality, and that Dr. Vora detected a new abnormality on the 2007 MRI that was not present on the 2006 MRI.

In this case, the ALJ simply found that Dr. Cathey's determination, that there were no neurological abnormalities on the 2006 MRI, was credible, and that while there was a new abnormality on the 2007 MRI, Johnson had failed to causally connect that abnormality to his compensable injury. The Commission affirmed and adopted this finding. The Commission was entitled to find Dr. Cathey's opinion credible and give it more weight in arriving at this decision.

## B. Denial of Temporary–Total–Disability Benefits

Temporary-total disability is that period within the healing period in which the employee suffers a total incapacity to earn wages. *Neal, supra.* However, Arkansas Code Annotated section 11–9–526 (Repl.2002), provides, "If any injured employee refuses employment suitable to his or her capacity offered to or procured for him or her, he or she shall not be entitled to any compensation during the continuance of the refusal, unless in the opinion of the Workers' Compensation Commission, the refusal is justifiable."

Dr. Griffin took Johnson off work on December 5, 2006, and returned him to light-duty work on December 8, 2006, with a ten-pound lifting restriction. Johnson and Sandra Marler gave contradictory testimony surrounding whether Johnson was offered a job within his restrictions.

While he admitted that Abilities Unlimited had accommodated his work restrictions in the past, Johnson testified that Marler did not offer to accommodate his ten-pound lifting restriction in December 2006 by offering to have someone help him lift the paper into the baler. However, Marler testified that she offered to give Johnson helpers to lift the paper and put it into the baler, and that all that was left for Johnson to do was to close the baler door and push a button. Marler testified that Johnson told her that he could not do that job.

The ALJ determined that Marler's testimony was credible that she had offered Johnson a job within his restrictions but that he had refused the job, that such

refusal was unjustified, and that such refusal barred his claim for temporary-total-disability benefits. The Commission affirmed and adopted these findings. Here, we have a swearing match with diametrically opposed testimony. Marler's testimony was determined to be the credible evidence. We are bound by the Commission's credibility decisions; therefore, there is substantial evidence to deny Johnson's claim for temporary-total-disability benefits on the basis that he refused suitable employment.

### II. *Cross–Appeal*

 On cross-appeal, appellees argue that the Commission erred in determining that there was substantial evidence that Johnson's wage rate should be calculated on a full-time workweek. The ALJ found that Johnson's average weekly wage should be determined based on the number of hours he actually worked before the injury instead of the thirty-seven and one-half hours he worked during some but not all weeks. In reversing this finding, the Commission stated, "The Full Commission finds that the claimant's average weekly wage should be based on a full-time workweek pursuant to Ark.Code Ann. § 11–9–518(a)(1)." That statutory subsection provides, "Compensation shall be computed on the average weekly wage earned by the employee under the contract of hire in force at the time of the accident and in no case shall be computed on less than a full-time workweek in the employment."

Here, Johnson testified that although he was at work forty hours per week, he did not get paid for his thirty-minute lunch break, so he worked thirty-seven and one-half hours per week. While admitting there were weeks that he did not work that many hours, Johnson said that the reasons were because he was taking his girlfriend to the doctor or going to the dentist or the eye-doctor. No one disputed this testimony. Although there were weeks in which Johnson did not work thirty-seven and one-half hours, he testified that this was his normal workweek. The statute clearly mandates that in no case shall compensation be computed on less than a full-time workweek; therefore, we find no error in the Commission's decision to base Johnson's benefits on a thirty-seven-and-one-half-hour workweek, which was a full workweek for him.

Affirmed on direct appeal and cross-appeal.

VAUGHT, C.J., and MARSHALL, J., agree.