Cite as 2020 Ark. App. 106

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-19-365

|  |  |
|---|---|
| DAVID GRANT | **Opinion Delivered** February 12, 2020 |
| APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G708294] |
| V. |  |
| WESTAR REFRIGERATED TRANSPORTATION AND MIDWESTERN INSURANCE ALLIANCE, LLC | REVERSED AND REMANDED |
| APPELLEES |  |

## LARRY D. VAUGHT, Judge

David Grant appeals the opinion of the Arkansas Workers' Compensation Commission (Commission) finding that he failed to prove entitlement to temporary total-disability (TTD) benefits from December 21, 2017, to a date yet to be determined, as a result of his compensable deep-vein-thrombosis (DVT) injury. He argues that substantial evidence fails to support the Commission's opinion. We agree and reverse and remand.

Grant was employed with Westar Refrigerated Transportation (Westar) as a truck driver when he suffered an admittedly compensable injury to his left knee on October 5, 2017. He was treated by Dr. Konstantin Berestnev on October 9, who diagnosed Grant with left-knee pain and an unspecified fracture of the left patella, ordered a knee brace for Grant, and returned Grant to work at restricted duty: no driving trucks, climbing, kneeling, or squatting.

Grant returned to Dr. Berestnev on October 13 with continued left-knee complaints. Dr. Berestnev noted that Grant had a history of left-leg DVT and ordered a Doppler study. Grant's release to return to work with restrictions was continued.

On October 16, Grant received medical treatment from the emergency room at Washington Regional Medical Center for left-leg pain. A Doppler study was performed and confirmed a left-leg DVT. Grant was issued prescription medication, instructed to "[s]tay off the affected leg as much as possible during the next week. When sitting or lying down, keep the leg elevated," and ordered to follow up with his primary-care physician. Also on October 16 after his release from the emergency room, Grant had a "US Duplex Lower Ext Unilateral Limited" exam that had been previously ordered by Dr. Berestnev. The impression from this test was left-leg DVT.

On October 20, Grant underwent a left-knee MRI without contrast at the request of Dr. Berestnev. Grant was seen by Dr. Berestnev that same day. Dr. Berestnev's October 20 report notes that Grant said his knee pain was getting worse. Dr. Berestnev stated that the MRI showed no internal knee derangement but that testing confirmed that Grant had DVT in his left lower leg. Dr. Berestnev referred Grant to a primary-care physician for DVT treatment and activity restrictions.

On November 16 and 20, Grant received medical treatment from primary-care physician Dr. Rosemary Pierre for DVT. She noted swelling, tenderness, and pain in Grant's left knee, diagnosed him with DVT, and prescribed medication for him. On December 21, Dr. Pierre wrote a letter stating that Grant had been her patient since November 16, he was diagnosed with a left lower-leg DVT, and he was on medication for it. Dr. Pierre wrote, "He

2

is a truck driver, with prolonged sitting and inactivity that increases risk for DVT formation. Mr. Grant is in pain as a result of his ailment and is unable to work at this time."

A hearing before an administrative law judge (ALJ) was held on April 10, 2018. Grant testified that he was working for Westar as an over-the-road truck driver on October 5, 2017, when he injured his left knee. He reported the injury to Westar, and at the request of his employer, finished delivering his load. On October 9 after he had returned home, Grant was treated by Dr. Berestnev, who diagnosed Grant with a knee sprain, gave him a leg brace, and returned him to work with restrictions. Grant admitted that Westar advised him that it had work within the restrictions issued by Dr. Berestnev. Grant also admitted that he did not return to Westar to try the light-duty work.

Grant further testified that he returned to Dr. Berestnev on October 13, and the doctor recommended testing for DVT in his left leg. Grant stated that the tests revealed DVT in his left lower leg and that his family practitioner, Dr. Pierre, later took him off work. Grant contended that he was entitled to medical treatment and related expenses for his admittedly compensable left-knee injury and for DVT, which he claims is a compensable consequence of his knee injury. Grant also sought TTD benefits from October 9 to a date yet to be determined.

On July 9, 2018, the ALJ issued an opinion finding that (1) Grant's DVT is a compensable consequence of his compensable left-knee injury, (2) Grant is entitled to medical treatment for his left knee and DVT, (3) Grant is entitled to additional medical treatment for his left knee and DVT, (4) Grant is entitled to reimbursement for mileage and out-of-pocket expenses related to his knee injury and DVT, (5) Grant is not entitled to TTD benefits from October 9 to December 20, 2017, because he refused Westar's offer of work within his work

3

restrictions, and (6) Grant is entitled to TTD benefits from December 21, 2017, to a date yet to be determined.

Westar appealed the ALJ's opinion, and on January 17, 2019, the Commission issued an opinion affirming the ALJ's finding that Grant's DVT was a compensable consequence of his left-knee injury. However, the Commission reversed the ALJ's finding that Grant is entitled to TTD from December 21, 2017, to a date yet to be determined pursuant to Arkansas Code Annotated section 11-9-526 (Repl. 2012). Grant appealed the Commission's opinion.

On appeal, Grant challenges the sufficiency of the evidence supporting the Commission's finding that he failed to prove entitlement to TTD benefits from December 21, 2017, to a date yet to be determined. He argues that he is entitled to TTD benefits during this period and that the Commission resorted to "speculation, conjecture and flawed logic" in relying on section 11-9-526 to deny him those benefits.

In appeals involving workers'-compensation claims, this court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *City of Fort Smith v. Kaylor*, 2019 Ark. App. 517, at 3, 588 S.W.3d 803, 805. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.*

Arkansas Code Annotated section 11-9-521(a), which applies to scheduled injuries, provides that a claimant is entitled to TTD benefits "during the healing period or until the employee returns to work, whichever occurs first." If the claimant is either outside the healing period or has returned to work, he or she is not entitled to benefits. *Kaylor*, 2019 Ark. App. 517, at 4, 588 S.W.3d at 806. The healing period is that period for healing of the injury that

4

continues until the employee is as far restored as the permanent character of the injury will permit. *Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 152, 41 S.W.3d 822, 826 (2001). If the underlying condition causing the disability has become more stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. *Id.*, 41 S.W.3d at 826. Whether an employee's healing period has ended is a factual determination to be made by the Commission. *Id.*, 41 S.W.3d at 826.

Pursuant to section 11-9-521(a), as of December 21, 2017, Grant is entitled to TTD benefits because the undisputed facts demonstrate that he is still in his healing period (he is being treated by Dr. Pierre) and he has not returned to work. However, the Commission found that Grant was not entitled to TTD benefits under section 11-9-526, which provides:

> If any injured employee refuses employment suitable to his or her capacity offered to or procured for him or her, he or she shall not be entitled to any compensation during the continuance of the refusal, unless in the opinion of the Workers' Compensation Commission, the refusal is justifiable.

Ark. Code Ann. § 11-9-526. The Commission found that Grant was not entitled to receive TTD benefits from December 21, 2017, to a date yet to be determined because he refused suitable work that had been offered by Westar. In reaching this conclusion, the Commission cited evidence that Grant was returned to work by Dr. Berestnev with restrictions, Westar communicated to Grant that it had work available for him within his restrictions, Grant admitted that Westar offered him work within his restrictions, and Grant did not return to work.

There is no dispute that after Dr. Berestnev diagnosed Grant with a left-knee strain on October 9, Grant was released to return to work with restrictions. There is no dispute that Westar offered Grant work within those restrictions, that Grant received the offer, and that

5

he refused to return to the work offered. Accordingly, pursuant to section 11-9-526, Grant was not entitled to TTD from October 9 to December 20.[1]

However, this appeal concerns a different injury and a different subsequent period of disability. On December 21, Dr. Pierre stated that Grant suffered from DVT—an injury separate and apart from his knee strain—and opined that Grant was unable to work because of the DVT injury. Dr. Berestnev also diagnosed Grant with DVT and deferred to his primary-care physician for treatment and activity restrictions. All the evidence in the record shows that Grant was restricted from work completely as of December 21 due to DVT. Moreover, there is no evidence in this record that after Dr. Pierre took Grant off work on December 21, Westar offered Grant "employment suitable to his capacity," as required by section 11-9-526. No such employment is possible when an employee has been taken off work entirely. Section 11-9-526 has no application here because the facts demonstrate that Grant was totally restricted from working as of December 21, 2017.

The Commission cites *Gomez v. Crossland Construction Co., Inc.*, 2011 Ark. App. 787, and Westar cites *Gomez*; *Johnson v. Abilities Unlimited, Inc.*, 2009 Ark. App. 866, 372 S.W.3d 838; and *Neal v. Sparks Regional Medical Center*, 104 Ark. App. 97, 289 S.W.3d 163 (2008), for the proposition that section 11-9-526 applies in the case at bar. The facts in these cases are distinguishable from the facts in the case at bar. In *Gomez*, *Johnson*, and *Neal*, section 11-9-526 applied because the employees were returned to work *with* restrictions. Here, Dr. Pierre—and Dr. Berestnev, who deferred to Dr. Pierre—removed Grant from work completely. Westar

---

[1] The ALJ found that Grant was not entitled to TTD benefits from October 9 to December 20, and Grant did not appeal that finding.

has failed to cite any case wherein section 11-9-526 applied when an employee was restricted from work entirely, and we are unable to find such a case.

In denying Grant TTD benefits, the Commission acknowledged that Dr. Pierre took Grant off work; however, the Commission discounted her opinion, finding that the evidence did not demonstrate that Dr. Pierre knew that Westar had previously offered Grant light-duty work. It is irrelevant whether Dr. Pierre was aware that Grant had been previously offered light-duty work. Westar's offer of work was made to Grant for a different injury (leg strain) and for a different period of disability (October 9 to December 20). As stated above, Dr. Pierre diagnosed Grant with an entirely different condition on December 21, and she took him off work for that condition. There is no work Westar could have offered that would have accommodated Grant's off-work status.

The Commission also found that Dr. Pierre's opinion is consistent with its finding that Grant should have returned to the work Westar previously offered. The Commission found:

> In fact, Dr. Pierre opined that [Grant] had engaged in "prolonged sitting and inactivity that increased risk for DVT formation." The evidence tends to show that, if [Grant] had returned to restricted work duties as offered by [Westar], he would not have suffered from "prolonged sitting and inactivity that increase risk for DVT formation." [Grant's] return to appropriate work arguably would have decreased his risk of DVT formation, according to Dr. Pierre's December 21, 2017 correspondence.

There is no basis in the evidence for these findings. The record is silent about the exact nature of work Westar had available for Grant within his restrictions for his knee strain. All that is known is that it did not include driving a truck, climbing, kneeling, or squatting. The light-duty work could have been a desk job that would have involved prolonged sitting and inactivity at a desk, which Dr. Pierre opined could increase the risk of DVT formation. It would require speculation and conjecture to make findings on this issue either way.

7

For these reasons, we hold that substantial evidence fails to support the Commission's finding that Grant failed to prove entitlement to TTD benefits from December 21, 2017, to a date yet to be determined. Accordingly, we reverse and remand with instructions consistent with this opinion.

Reversed and remanded.

KLAPPENBACH and HIXSON, JJ., agree.

*Caldwell Law Firm, P.A.*, by: *Andy L. Caldwell*, for appellant.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Randy P. Murphy* and *Brandon T. Cole*, for appellees.